**The PEOPLE of the State of Colorado, Petitioner–Appellee, In the Interest of Lawrence E. KING, Respondent–Appellant.**

No. 89CA0882.

Colorado Court of Appeals, Div. I.

June 7, 1990.*

Stephen H. Kaplan, City Atty., Morris Evans, Asst. City Atty., Denver, for petitioner-appellee.

Sally S. Townshend, Denver, for respondent-appellant.

Opinion by Judge MARQUEZ.

Lawrence E. King appeals from the trial court's order upholding the certification of him for long-term mental health care and treatment. We affirm.

The following facts are not in dispute. On November 8, 1988, King was taken into custody by officers of the Denver Police Department because he refused to leave an RTD stop where he had been building a

* This previously Unpublished Opinion announced May 3, 1990 is selected for Official Publication     June 7, 1990.

lean-to shelter. Later, King was transferred to a hospital and placed on a 72-hour emergency mental health hold pursuant to § 27–10–105, C.R.S. (1989 Repl.Vol. 11B). King was subsequently certified for short-term treatment in accordance with § 27–10–107, C.R.S. (1989 Repl.Vol. 11B).

Eventually, a petition for long-term care and treatment was filed with the probate court pursuant to § 27–10–109, C.R.S. (1989 Repl.Vol. 11B). Following a hearing, the trial court granted the petition and ordered that King receive long-term care and treatment for a period not to exceed six months. By its own terms, the order provided that it would expire on November 11, 1989.

## I.

■ Before reaching the merits of the appeal, we must first address the People's contention that since the trial court's order has already expired, the issues have been rendered moot. We conclude that this case is excepted from the mootness doctrine.

■ Generally, when issues presented in litigation become moot because of subsequent events, we decline to render an opinion on the merits of an appeal. However, we may resolve an otherwise moot case if the matter is one "capable of repetition, yet evading review." *Humphrey v. Southwestern Development Co.,* 734 P.2d 637 (Colo.1987).

The record here reflects that King had been hospitalized three times prior to the one in question. Under such circumstances, we conclude that this case meets the above criteria for being excepted from application of the mootness doctrine. *See People in Interest of Archuleta,* 653 P.2d 93 Colo.App.1982. Accordingly, we proceed to the merits of the appeal.

## II.

■ King's sole argument on appeal is that the evidence was insufficient, as a matter of law, to establish that he was a present danger to others. We disagree.

The People here were required to prove, by clear and convincing evidence, that there is a reasonable basis to believe that King's mental illness results in a *present* danger to himself or others, or renders him gravely disabled. *People v. Stevens,* 761 P.2d 768 (Colo.1988). The evaluation of a person's potential for doing harm, *i.e.,* whether he is "dangerous," must be made as of the time of certification for long-term care and treatment, and this requires a finding of *present* danger to self or others. *People v. Stevens, supra.*

In addition, there must be a reasonable basis to believe that King is dangerous, as shown by expert medical opinion and other clear and convincing evidence. Dangerousness can be shown by evidence of injurious acts, attempts, or threats.

Here, at the hearing on the petition for long-term care and treatment, the parties stipulated that King remained mentally ill. They also agreed that King had been offered voluntary treatment and had either declined such treatment, or there existed reasonable grounds to believe that he would not follow through with the treatment on a voluntary basis. The only issues presented to the court were whether, because of King's mental illness, he posed a danger to others or was gravely disabled. Specifically excluded was whether King presented a danger to himself.

At the hearing, a clinical psychologist, who testified on behalf of the People, stated that King suffered from three different mental illnesses: psychoactive substance dependency upon both alcohol and petroleum based inhalants, dementia, and residual schizophrenia or alcoholic hallucinosis. Nevertheless, according to the psychologist, King would state that he had no mental illness. She opined that King "remains a danger to others if not in treatment at his current setting," and thus, King was "not necessarily dangerous right now" but "may be dangerous if he is out of the treatment."

In explaining why King was a danger to others, the witness related that King, in February 1987, was apprehended brandishing a knife; that in April 1988, he threatened a police officer; and that, in August

1988, he confronted another person with an ax. The witness stated that the incidents with the weapons had the potential for creating "very potentially lethal violence towards other people." Reports indicated that King was acutely psychotic during each of these episodes. Further evidence revealed that, when admitted to the hospital in November 1988, King had threatened to kill the doctor in the emergency room. While in the hospital, he talked of hearing voices of little girls, about being a cannibal, planning to kill his enemies, and having murdered certain relatives.

On cross-examination, the psychologist affirmed that King did not present an immediate danger to others in his present setting, but "he could be maybe if he got out sometime down the road." Regarding provision of food, shelter, clothing, and medical care, the witness testified that although King primarily lived on the streets, he was capable of "doing very well."

The evidence presented would not support a finding that King was gravely disabled under the current definition of that term. However, considering King's dementia and history of assaultive behavior, the court found in its ruling from the bench that, although King was not currently dangerous, he continued to be mentally ill and "as a result of that mental illness is a danger to others."

In its written order, the trial court concluded that although "he is not currently dangerous due to the structure and supervision he is receiving, [King] needs to gain the tools to learn to cope without violence. [King's] continuing conversations of morbidity and violence indicates to the Court an underlying propensity for dangerousness."

King contends that the only evidence presented to support a finding of dangerousness concerned his *future*, rather than his *present*, potential to cause harm. Specifically, King points out that the opinion testimony predicted that if King were discharged from the hospital:

"[H]e would discontinue the current medications ... refuse to participate in any kind of outpatient treatment ... develop increasing frequency in severity of psychotic symptoms, and within a reasonably short period of time, ... *two to three months*, would confront an innocent citizen, [and] place him or her in a situation of potentially lethal danger." (emphasis added)

Here, the facts are very similar to those deemed sufficient for a finding by clear and convincing evidence of present danger to others in *People v. Stevens, supra.* King was mentally ill because of alcohol and petroleum substance abuse, but he denied any mental illness, and had declined or would not follow through treatment on a voluntary basis. Further, there was expert testimony as to his potential dangerousness when he is out of treatment and that he had threatened others, including a police officer, with weapons. In addition, King had a history of prior hospitalizations, had experienced eposides of acute psychosis, and, even in the hospital setting, continued to fantasize concerning the perpetration of violence.

We conclude that, based on the totality of the evidence including the psychologist's professional opinion as to respondent's potentiality for danger, the court was justified in ordering continued involuntary treatment. *See Perreira v. State,* 768 P.2d 1198 (Colo.1989); *People v. Stevens, supra.*

The evidence here is sufficient to distinguish this case from *People in Interest of Bucholz,* 778 P.2d 300 (Colo.App.1989), in which the only question was the possibility of Bucholz's becoming gravely disabled and in which no issue of a propensity for violence to others was presented.

Accordingly, we perceive no error in the court's certification of King for involuntary long-term mental health treatment.

The order is affirmed.

PIERCE and HUME, JJ., concur.