**BINGO GAMES SUPPLY CO., INC., Plaintiff–Appellee,**

**and**

**Colorado Bingo; Colorado Pickle Jar, Inc.; and The Bingo Co., Plaintiffs– Appellees and Cross–Appellants,**

**v.**

**Natalie MEYER, as the Secretary of State of the State of Colorado, and the Department of State, State of Colorado, Defendants–Appellants and Cross–Appellees.**

No. 93CA1551.

Colorado Court of Appeals, Div. IV.

Feb. 23, 1995.

As Modified on Denial of Rehearing April 13, 1995.

No appearance for plaintiff-appellee.

Dennis P. Walker, Denver, for plaintiffs-appellees and cross-appellants.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Laurie Rottersman, Maurice G. Knaizer, Asst. Attys. Gen., Denver, for defendants-appellants and cross-appellees.

Opinion by Judge RULAND.

In an action brought to challenge certain fees and reporting requirements adopted under the Bingo and Raffles Law, § 12–9–101, et seq., C.R.S. (1991 Repl.Vol. 5A), defendants, the Secretary of State and the Department of State, appeal from part of the summary judgment entered by the trial court. Plaintiffs, Colorado Bingo, Colorado Pickle Jar, Inc., and The Bingo Co., cross-appeal from the remainder of the judgment. We affirm the judgment and dismiss the appeal of defendants.

Pursuant to Colo. Const. art. XVIII, § 2, the Secretary is authorized to issue licenses for conducting non-profit games of chance. In 1990, the General Assembly reenacted the Bingo and Raffles Law with significant amendments that delegated authority to the Secretary to determine annual licensing fees for games of chance suppliers and manufacturers. The legislation also required suppliers and manufacturers to maintain accurate records and to submit quarterly reports. See §§ 12–9–107.5(5) & 12–9–107.5(6), C.R.S. (1991 Repl.Vol. 5A).

In June 1991, the Secretary implemented the statutes by approving quarterly fees and reporting forms. Plaintiffs, all of whom are bingo and raffle suppliers and manufacturers, were notified of these fees and forms by way of a memorandum.

The Secretary established the initial quarterly fee as 1% of plaintiffs' quarterly gross revenue of covered items sold in Colorado. The commencement date was designated as the second calendar quarter of 1991. The purpose of the fee was to fund the Secretary's estimated costs of administering and enforcing the statutes.

The reporting requirements were designed to create an "audit trail" for bingo supplies from the manufacturer to the supplier, and then to the purchaser, thereby permitting discovery and verification of illegal profit-skimming activities by gaming managers.

Under protest and reservation of rights, plaintiffs filed the required reports and paid the fees. In September 1991, they initiated this action challenging the constitutionality of the law, the authority of the Secretary to implement the law informally, and they requested a refund of fees paid. Plaintiffs' complaint was based upon the declaratory judgment procedure contained in C.R.C.P. 57.

The parties filed cross-motions for summary judgment. The trial court ultimately granted partial summary judgment in favor of plaintiffs on the issue whether the Secre-

tary must comply with the Administrative Procedures Act (APA) rule-making provisions in order to adopt the 1% fee. Partial summary judgment was entered in favor of defendants on the remaining issues. Defendants then appealed the portion of the judgment requiring compliance with the APA, and all but one of the plaintiffs cross-appealed the remainder of the judgment.

## I

■ In their cross-appeal, plaintiffs' first contention is that the Secretary's assessment of 1% of all gross revenues constitutes an income tax in violation of the separation of powers doctrine, Colo. Const. art. III. We agree with the trial court's determination that the assessment is a fee and not a tax.

We view the analysis of a division of this court in *Westrac, Inc. v. Walker Field,* 812 P.2d 714 (Colo.App.1991), as instructive in resolving this issue. The *Westrac* court held that an airport authority did not establish an illegal income tax by imposing a fee on off-airport car rental agencies of 10% of gross revenues for car rentals to customers picked up at the airport. The court reasoned that the fee was legally permissible because the airport used the monies to defray overall operating expenses and because the charge was directly related to the car rental agency's use of the airport and the corresponding benefits obtained.

■ Here, inasmuch as the Department of State is a cash funded agency, the Secretary is authorized to collect fees for officially executed papers and "other official work which may be done in [her] office." Section 24–21–104, C.R.S. (1988 Repl.Vol. 10A). Moreover, contrary to plaintiffs' contention, the fact that a fee is based on a percentage of gross revenues does not convert a legislatively permitted assessment into an illegal tax. *Westrac, Inc. v. Walker Field, supra; see also Ginsberg v. Denver,* 164 Colo. 572, 436 P.2d 685 (1968) (service charge based on a percentage of ticket prices for events at sports stadium held not a tax). Hence, we conclude that the Secretary has not imposed an illegal tax.

We find further support for this conclusion in the analysis of other courts in such cases as *National Biscuit Co. v. Philadelphia,* 374 Pa. 604, 98 A.2d 182 (1953). In that case, the court enumerated factors that distinguish an assessment as a fee rather than a tax. Those factors include whether the charge is applicable only to a type of business that is subject to supervision and regulation by the licensing authority, whether the supervision and regulation is in fact conducted by the licensing authority, and whether the legislative purpose in exacting the charge is to reimburse the licensing authority for the expense of the supervision and regulation.

The nature and function of the charge here is to regulate and supervise a specific industry. The supervision and regulation is in fact conducted by the statutorily mandated licensing authority. And, the legislative purpose in delegating authority to the Secretary to set the appropriate fees is to reimburse the licensing authority for the expense of the supervision and regulation.

We also reject plaintiffs' argument that the potential 25% surcharge on the assessment fee, imposed under § 24–21–104(3), C.R.S. (1994 Cum.Supp.), supports plaintiffs' claim that the assessment is a tax. This surcharge is not referenced in the enabling act, § 12–9–107.5(5), and if applicable at all, it is a legislatively imposed tax.

## II

■ In their appeal, defendants contend that the trial court erred in ruling that the Secretary's decision as to the amount and type of fee was subject to the rule-making procedure contained in the APA, § 24–4–103, C.R.S. (1994 Cum.Supp.). We conclude that this issue is moot and, accordingly, dismiss defendants' appeal.

Following entry of the trial court's judgment, the Secretary implemented the court's decision by adoption of a formal rule in compliance with the APA procedures. As a result, the issue is now moot because any judgment rendered will have no practical effect upon this controversy. *See In re Marriage of Hartley,* 886 P.2d 665 (Colo.1994).

Further, we are not persuaded that we should review this contention under an exception to the mootness doctrine which allows review of issues which are capable of repetition but may escape judicial review because of time constraints inherent in the judicial process. *See Dempsey v. Romer,* 825 P.2d 44 (Colo.1992).

For this exception to be applicable, we would be required to assume that the General Assembly will adopt future and similar legislation which does not either set the amount of the fee or the means for calculating the fee, and that an agency will act in response to the legislation without complying with the rule-making procedure. We decline to make these assumptions.

### III

Plaintiffs next contend that the trial court erred by ruling that the fee assessment was subject to APA rule-making procedures but that the reporting requirements were not. In support of this contention, plaintiffs argue that the fee assessment and the reporting requirements are inextricably intertwined because the fees are collected to pay for a computer database in which detailed information from the reports is inserted to create an audit trail. As a result, plaintiffs argue, the APA rule-making procedure should apply. We are not persuaded.

■ We agree with the trial court's conclusion that the information required on the forms is substantially that mandated by statute. Specifically, § 12–9–107.5(6) requires plaintiffs, for at least three years, to maintain accurate records of "all licensed activities," including:

> invoices for all games of chance equipment ... which invoices are *specific as to the nature, description, quantity, and serial numbers of the pull tabs, bingo cards or sheets,* and other equipment so conveyed or distributed. The records shall also show all receipts and expenditures made in connection with licensed activities, including, *but not limited to,* records of sales by dates, purchasers, and items sold, monthly bank account reconciliations, disbursement

records, and credit memos for any returned items.

(emphasis supplied)

With reference to the reports, § 12–9–107.5(5) directs all manufacturer and supplier licensees to:

> enumerate by quantity, purchaser, and price the pull tabs, bingo cards or sheets, and other games of chance equipment manufactured, conveyed, or distributed within Colorado ... and *shall include the licensee's total sales of equipment* ... and the names and addresses of all Colorado suppliers or agents of the licensee....

(emphasis supplied)

Section 12–9–107.5 does not require the Secretary to adopt a rule in order to implement the reporting requirement. *See* § 24–4–103, C.R.S. (1994 Cum.Supp.). In addition, because the information required for the reports is already substantially mandated by the enabling statute, APA rule-making on the same subject matter is an unnecessary procedure. *Cf. Pulido v. Heckler,* 758 F.2d 503 (10th Cir.1985) (Generally, an administrative agency is not required to promulgate rules interpreting every statutory provision that may be relevant to its actions.).

### IV

Next, plaintiffs contend that the trial court erred in ruling that they were not entitled to a refund of the fees paid prior to entry of judgment because their action challenging the imposition of those fees under the APA was not timely. Again, we disagree.

■ Plaintiffs argue that there was no "final" agency action, order, or adjudication from which to seek judicial review under § 24–4–106, C.R.S. (1988 Repl.Vol. 10A). Alternatively, they argue that since the last monthly installment payment for fees due for the second calendar quarter was September 15, 1991, an action initiated on September 6, 1991, was timely. We reject both contentions.

Under the APA, an agency "action" is defined as:

> the whole or any part of *any* agency rule, order, interlocutory order, license, sanc-

tion, relief, or the equivalent or denial thereof ... and [the final agency action] shall specify the date on which the action becomes effective.

Section 24–4–102(1), C.R.S. (1988 Repl.Vol. 10A) (emphasis supplied).

Here, the Secretary's notice informing plaintiffs of the fee assessment and reporting requirements was announced by memorandum on June 15, 1991. This announcement was equivalent to an order and, as such, amounted to an agency action as defined under §§ 24–4–102(1) & 24–4–102(15), C.R.S. (1988 Repl.Vol. 10A).

Further, it is immaterial whether the effective date is characterized as the announcement date, June 15, 1991, or the initial assessment due date, July 15, 1991. This is because plaintiffs' complaint was filed more than 30 days after either date. *See* § 24–4–106(4), C.R.S. (1988 Repl.Vol. 10A).

Hence, we agree with the trial court's conclusion that it lacked jurisdiction to order any refund of the fees paid. *See Clasby v. Klapper*, 636 P.2d 682 (Colo.1981). Further, because of our resolution of this issue, it is unnecessary to address plaintiffs' claim for attorney fees under 42 U.S.C. § 1988 (1988).

## V

Plaintiffs also contend that the Secretary's imposition of the fee and the reporting process constitutes a violation of their state and federal constitutional rights to due process and equal protection. Plaintiffs also complain that the Secretary has violated the constitutional prohibition against adoption of a retroactive law. We find no merit in these contentions.

### A

Plaintiffs argue that they were subject to disparate treatment in that an assessment was imposed on them that implicates a right to livelihood in violation of equal protection guarantees. We are not persuaded.

With reference to this constitutional claim, plaintiffs point out that unlicensed general retailers who sell items covered by the Act, such as public address systems, are not re-quired to report. In addition, they also complain that out-of-state suppliers who are licensed in Colorado can acquire supplies and equipment from unlicensed manufacturers with the result that the manufacturers will offer a more favorable price, thus allowing these suppliers a competitive advantage. Finally, plaintiffs point to the dramatic increase in the cost of doing business which results from the 1% fee and which does not attach to the general retailers or to the products sold through out-of-state licensed suppliers.

■ Regulatory classifications which neither impinge on fundamental rights nor affect suspect classes do not deny equal protection guarantees if the distinctions have a reasonable basis and are rationally related to a legitimate government interest. And, under this test, a presumption of constitutionality attaches to the classification, and the challenging party must establish a constitutional violation beyond a reasonable doubt. *Colorado Auto Auction Services v. Commerce City*, 800 P.2d 998 (Colo.1990).

■ Plaintiffs properly concede the state's legitimate need to regulate illegal acts in connection with authorized gambling activities as well as the need to establish violations and impose sanctions against violators. Hence, the threshold inquiry is whether persons who are in fact similarly situated are subjected to disparate treatment by the regulation. *Board of County Commissioners v. Flickinger*, 687 P.2d 975 (Colo.1984). In this connection, we note, however, that every possible hypothetical disparity need not be addressed by a statute or regulation, and that minor disparities do not rise to the level of a constitutional violation so long as members within the same class are treated uniformly. *See Tom's Tavern, Inc. v. Boulder*, 186 Colo. 321, 526 P.2d 1328 (1974).

■ Here, there is no basis in the record for us to conclude with any certainty that licensed out-of-state suppliers are in fact gaining either a significant competitive advantage or a significantly increased market share. Conversely, suppliers who furnish items for which a license is not required are foreclosed from furnishing items which require the license that plaintiffs hold. The

fact that the challenged regulation may cause plaintiffs to drop some unregulated items from their inventory does not in our view constitute a major disparity sufficient to constitute a constitutional violation.

### B

 Plaintiffs next contend that the fee and reporting requirements constitute an arbitrary denial of due process and equal protection guarantees because there was insufficient evidence to prove that the Secretary's computer database was actually capable of cross-referencing the information in aid of its audit purpose. Again, we are not persuaded.

As noted, the Secretary's reporting and assessment schemes further a legitimate state interest. *See Bellendir v. Kezer,* 648 P.2d 645 (Colo.1982). Conversely, plaintiffs cite no authority, and we find none, which requires the state to demonstrate the capability of its computers at the present time to cross-reference the material, as distinguished from acquiring the required technology to do so within a reasonable time.

As a result, even if we assume that the Secretary's computers are not equipped to cross-reference at present, there is nothing in the record to suggest that this objective cannot be accomplished within a reasonable time.

### C

Plaintiffs further contend that inasmuch as the fee was assessed for the entire calendar year in which plaintiffs received notice of the fee, the Secretary's assessment was applied retroactively in violation of Colo. Const. art. II, § 11 & Colo. Const. art. XV, § 12. As a result of these alleged constitutional violations, plaintiffs argue that they are entitled to equitable relief and attorney fees under 42 U.S.C. §§ 1983 & 1988 (1988). We again disagree.

The statutory provisions at issue became effective January 1, 1991. The Secretary's assessment notice was given approximately 6 months later, and it assessed fees only for the second calendar quarter, beginning April 1, 1991. Thus, the Secretary's implementation of the statute was not a chronologically retroactive application of the law. Further, the application of a statute is not rendered unlawfully retroactive merely because the facts upon which it operates occurred before the issuance of the notice. *Continental Title Co. v. District Court,* 645 P.2d 1310 (Colo.1982). We thus find no violation of plaintiffs' constitutional rights.

We have considered and find no merit in plaintiffs' other contentions.

The judgment is affirmed; the appeal by defendants is dismissed as moot.

PLANK and NEY, JJ., concur.