2013 COA 143

**The PEOPLE of the State of Colorado, Petitioner–Appellee,**

**INthe INTEREST OF Gabriel VIVEK-ANATHAN, Respondent–Appellant.**

**Court of Appeals No. 13CA1203**

Colorado Court of Appeals,
Div. VII.

Announced October 24, 2013

As Modified on Denial of Rehearing
December 5, 2013

Larimer County District Court, No. 13MH 173, Honorable Thomas R. French, Judge

Sean C. McGill, County Attorney, Fort Collins, Colorado, for Petitioner–Appellee

The Life & Liberty Law Office, Sarah Schielke, Fort Collins, Colorado, for Respondent–Appellant

Opinion by JUDGE FOX

¶1 Respondent, Gabriel Vivekanathan, appeals the district court's order upholding his certification, pursuant to section 27–65–107, C.R.S.2013, for involuntary commitment and treatment at the Colorado Mental Health Institute at Pueblo (CMHIP). We conclude that the appeal is moot.

## I. Facts and Procedural History

¶2 Respondent, a twenty-five-year-old man, has suffered from schizophrenia since he was approximately sixteen years old. After he was hospitalized in April 2013 because of his mental illness, he and his mother sought voluntary treatment at an inpatient mental health facility called Choice House. In the next two months, Vivekanathan left Choice House twice. The second time Vivekanathan left, he was found by police and taken to Centennial Peaks Hospital for a seventy-two-hour involuntary commitment pursuant to section 27–65–105, C.R.S.2013.

¶3 A Centennial Peaks psychiatrist then filed with the Larimer County District Court a "Notice of Certification and Certification for Short–Term Treatment," which certified respondent for involuntary commitment to CMHIP based on the psychiatrist's finding that Vivekanathan was "gravely disabled" as a result of his mental illness. The psychiatrist later explained that he sought to transfer Vivekanathan to CMHIP because Centennial Peaks is an acute stabilization unit with normal stays of only three to five days, whereas CMHIP is designed for longer-term inpatient treatment.

¶4 Three days after the psychiatrist certified Vivekanathan for involuntary commitment at CMHIP, Vivekanathan submitted a letter to the district court, objecting to the certification and requesting a hearing. The court appointed counsel to represent Vivekanathan, and counsel was notified of her appointment five days later. The following day, Vivekanathan's counsel again requested a hearing, and the court held a hearing twelve days after Vivekanathan's initial request.[1]

¶5 At the July 1, 2013 hearing, the Centennial Peaks psychiatrist testified by telephone and Vivekanathan and his mother testified in person. The district court upheld the certification, concluding that "[Vivekanathan] is mentally ill and as a result of that illness is gravely disabled [and a] danger to self." [2]

¶6 Vivekanathan appeals the order upholding his certification.

¶7 On August 12, 2013, after this appeal was lodged and before the Larimer County Attorney's Office filed a response, Vivekanathan's civil commitment was terminated early by a different physician, thus raising the issue of whether a live controversy remains. After this court was notified of this development, we issued a September 18, 2013 order

1. Section 27–65–107 requires a court to hold a hearing within ten days of the respondent's request. Although the court did not hold the hearing until twelve days after Vivekanathan's request, we do not address whether this is an independent basis for reversal because Vivekanathan did not argue it as such and because we conclude this appeal is now moot. *See Gilford v. People,* 2 P.3d 120, 124 (Colo.2000) ("Deviations from the statutory process governing civil commitment proceedings, however minor, are subject to exacting appellate review, for even the slightest departure from these codified procedures can raise profound constitutional concerns."); *People in Interest of Lloyd–Pellman,* 844 P.2d 1309, 1311 (Colo.App.1992) ("Because of the curtailment of personal liberty which results from certification of mental illness, strict adherence to the procedural requirements of the civil commitment statutes is required."); *cf.People in Interest of Lynch,* 783 P.2d 848, 852 (Colo.1989) (no need to vacate certification when hearing was held fifteen days after request because respondent had waived ten-day hearing requirement).

2. Although the trial court found that Vivekanathan was both gravely disabled and a danger to himself, only gravely disabled was alleged in the request for commitment. In any event, the mootness analysis is the same for each.

to show cause why this appeal is not moot as a result of the termination of Vivekanathan's civil commitment.

¶ 8 Vivekanathan argues that the appeal is not moot because "next time [Vivekanathan] is deemed to have run away or wandered from an institutional setting, the same physician will likely seek to re-certify him for short-term commitment on the exact same erroneous grounds." Accordingly, he asserts that this is an issue "capable of repetition yet evading review." The state concurs. We disagree and conclude that the appeal is moot.

## II. Mootness Analysis

■ ¶ 9 In certain cases, an appeal of a short-term mental health treatment order does not become moot when the order expires if the issue on appeal is capable of repetition but evading review. *See, e.g., Gilford v. People,* 2 P.3d 120, 124 (Colo.2000); *People in Interest of Ofengand,* 183 P.3d 688, 691 (Colo.App.2008).

¶ 10 However, in the cited cases, the issue on appeal was a procedural issue relating to the particular circumstances in which the short-term treatment order was entered. *See Gilford,* 2 P.3d at 122 (whether failure to comply with the statutory requirement that petition seeking certification for long-term care and treatment be personally delivered divests the trial court of personal jurisdiction); *Ofengand,* 183 P.3d at 691 (whether respondent validly waived her right to counsel); *People in Interest of Hoylman,* 865 P.2d 918, 921 (Colo.App.1993) (whether Colorado citizens have statutory right to jury hearing on factual issues supporting short-term treatment certification). These cases addressed procedural issues that were capable of repetition yet evading review, and thus the exception to the mootness doctrine applied.

¶ 11 In *People in Interest of King,* 795 P.2d 273, 274 (Colo.App.1990), the division addressed a patient's challenge to a short-term commitment order because the record reflected that he had been repeatedly subject to short-term treatment orders. Thus, the division concluded that the matter was capable of being, and even likely to be, repeated.

■ ¶ 12 In this case, however, Vivekanathan is not seeking review of a procedural matter related to his treatment. Nor does the record disclose how many times he has been committed previously, or under what circumstances. While Vivekanathan's response to the show cause order represents that he has been "subject to compulsory institutionalizations previously (with one occurring just six weeks prior to the one at issue [here]), and [that two] institutionalizations were requested on the exact same grounds by the exact same physician," the record is insufficient as to this representation.[3] The Centennial Peaks psychiatrist vaguely alluded to a prior hospitalization, but neither counsel asked him about the circumstances of that hospitalization, or about the circumstances of any prior civil commitment.

¶ 13 The issue Vivekanathan argues in this appeal is whether the commitment order was supported by evidence submitted at the July 1, 2013 hearing. Vivekanathan points to the court's finding that he is gravely disabled. He argues that his circumstances do not satisfy the statutory requirement that he be gravely disabled, and that the evidence only supported a finding that he has mental illness.

¶ 14 Whether Vivekanathan is gravely disabled is a fact-specific determination, and it depends on his condition at the time the finding is made. Thus, even if the district court erred in making the finding in the July 2013 order, this finding does not determine whether at some point in the future Vivekanathan may be found to be gravely disabled. Therefore, the particular issue of whether the July 2013 finding of "gravely disabled" was erroneous has become moot. Vivekana-

---

**3.** Dr. Rayburn testified that he had known Vivekanathan "since his first admission to Centennial Peaks Hospital, which was ... on the 17th of April of 2013." The doctor testified that Vivekanathan "was discharged on the 1st of May and then readmitted on the 13th of June." His read-mission occurred after he "began decompensating with increasing auditory hallucinations, increasing paranoid, increasing ... psychomotor agitation[, and] voices in his head telling him to flee[.]"

than's release leaves nothing for us to adjudicate, and our ruling on the district court's order would have no practical effect. *SeeTrinidad Sch. Dist. No. 1 v. Lopez*, 963 P.2d 1095, 1102 (Colo.1998) ("An issue becomes moot when the relief granted by the court would not have a practical effect upon an existing controversy."). Any decision on the merits would result in an advisory opinion, and we should not issue such opinions.

¶ 15 On this record, any suggestion that Vivekanathan would be subject to the same action again is mere speculation. *See, e.g.,Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 381 (Alaska 2007) (where the patient was committed based on a set of facts establishing a grave disability, the court concluded that the facts were specific to her condition at, and immediately before, the hearing and any subsequent commitment "would be based on a different set of facts specific to [a] different" circumstance and thus not capable of repetition); *In re Joseph P.*, 406 Ill.App.3d 341, 348 Ill.Dec. 107, 943 N.E.2d 715, 719–20 (2010) (concluding that the patient did not meet his burden to show a substantial likelihood that the issue, and its resolution, would recur where the order appealed was based on his condition at a specific time and any determination as to the sufficiency of the evidence supporting that order would have no impact on future litigation); *In Interest of W.O.*, 673 N.W.2d 264, 267 (N.D.2004) (appeal was rendered moot where the trial court entered an order for less restrictive treatment); *E.S. v. State*, 178 Vt. 519, 872 A.2d 356, 359 (2005) (where a mental health patient had been released, the court concluded that an appellate ruling would not affect the former patient's custodial status and no exception to mootness existed).

¶ 16 Vivekanathan's appeal presents issues that have become moot as a result of the termination of the civil commitment order.

■ ¶ 17 While we need not reach the merits, we disagree with the dissent's conclusion that there is insufficient evidence to support the district court's determination that Vivekanathan is gravely disabled.[4]

¶ 18 The appeal is dismissed.

JUDGE BOORAS concurs.

JUDGE HAWTHORNE dissents.

JUDGE HAWTHORNE, dissenting.

Because I conclude that the issues raised in this appeal are capable of repetition while evading review, and therefore not moot, I dissent.

## I. Mootness

Generally, Colorado courts invoke their judicial power only when an actual controversy exists between adverse parties. *Trinidad Sch. Dist. No. 1 v. Lopez*, 963 P.2d 1095, 1102 (Colo.1998); *accordPeople v. Back*, 2013 COA 114, ¶ 10, ⸺ P.3d ⸺, 2013 WL 3943162; *Grossman v. Dean*, 80 P.3d 952, 960 (Colo. App.2003). If such a controversy no longer exists, or if the relief granted by a court would have no practical effect upon an existing controversy, then the issue before the court is considered moot and typically unreviewable. *People in Interest of O.C.*, 2013 CO 56, ¶ 9, 308 P.3d 1218. However, a court may resolve an otherwise-moot issue on its merits if it is capable of repetition while evading review, involves matters of great public importance, or involves an allegedly recurring constitutional violation.[1] *People v. Black*, 915 P.2d 1257, 1259 n.1 (Colo.1996).

---

4. Even if this appeal were not moot, we would affirm on the merits. We disagree with the merits analysis the dissent presents. Even while he was hospitalized, Vivekanathan expressed an "intense fear" that he was sent to Pueblo's mental health facility "to be killed." He views the facility as an "unsafe place" and is anxious, paranoid and "persistently responding to internal stimuli, including voices. He believes there are invisible people surrounding him at all times." Vivekanathan believes he is part of a "hypnosis game" where he is in a trance[.] Dr. Rayburn opined that Vivekanathan has "very little insight" into

his condition and that he needs to be in a high intensity setting in order for him to stabilize. If he does not stabilize, Dr. Rayburn opines that: "he will have a progressive downhill course[,] as that is the nature of his illness." According to Dr. Rayburn, an intensely supervised setting is "vital" to giving Vivekanathan the "best opportunity for responsive medications," and stabilization.

1. Many Colorado cases state that an issue is not moot if one of the mootness exceptions applies,

Here, as noted by the majority, respondent's certification was terminated approximately one month before it would have expired and days before the appellate answer brief was filed. Nevertheless, it would have expired before this opinion was issued even if it had not been terminated. Accordingly, we asked the parties to brief the mootness issue. Neither party, however, addressed what practical or legal effect, if any, a terminated or expired certification under section 27–65–107, C.R.S.2013, has on a formerly certified person. For example, the parties did not discuss whether the certification records are destroyed or, if not, who has access to them and for what purposes they may be used. *Cf.Evitts v. Lucey,* 469 U.S. 387, 391n.4, 105 S.Ct. 830, 833 n. 4, 83 L.Ed.2d 821 (1985) (prisoner's release from custody and restoration of civil rights during appeal's pendency did not render petition for writ of habeas corpus moot because potential collateral consequences of conviction remained); *Moland v. People,* 757 P.2d 137, 139–40 (Colo.1988) ("[A] criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." (quoting *Sibron v. New York,* 392 U.S. 40, 57, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968))).

Nevertheless, even if I were to assume that a terminated or expired certification can have no effect on a formerly certified person and, therefore, that a ruling on such a certification would have no practical effect, *see TrinidadSch. Dist. No. 1,* 963 P.2d at 1102 (issue is moot when relief is without practical effect), I would still reach this appeal's merits because, as explained below, I conclude that the issues raised here are capable of repetition while evading review. Because the "evading review" inquiry is straightforward, I address it first.

### A. Evading Review

The issues that respondent raises on appeal would evade review because they concern his short-term certification, which necessarily expires three months after entry. *See* § 27–65–107(1), C.R.S.2013; *People in Interest of Hoylman,* 865 P.2d 918, 920 (Colo.App.1993) (issues concerning orders for short-term hospitalization will evade review because such orders "will expire before the review of such an order may be had before an appellate court"); *People in Interest ofOfengand,* 183 P.3d 688, 691–92 (Colo.App. 2008) (in proceeding to involuntarily medicate respondent, issue of whether respondent validly waived her right to counsel would "repeatedly escape our review because the duration of the type of order challenged here cannot exceed six months"); *see alsoWell Augmentation Subdistrict v. City of Aurora,* 221 P.3d 399, 416–17 (Colo.2009) (issue "may" continue to evade review "because of the short timeframe" associated with these appeals); *Romero v. People,* 179 P.3d 984, 986 n.2 (Colo.2007) (issue would evade review "given the relatively short sentences involved and the length of the appeals process"); *Colo. Dep't of Corr. v. Madison,* 85 P.3d 542, 544 n.2 (Colo.2004) (issue would evade review because of the "relatively short statutory time periods that exist in these proceedings"); *Simpson v. Bijou Irrigation Co.,* 69 P.3d 50, 71 (Colo.2003) (issue satisfied "evading review" portion of "capable of repetition, yet evades review" doctrine when it "may" evade appellate review); *Urevich,* 667 P.2d at 762 (issue would evade review when "there is no reason to believe that it will be any more likely to obtain review the next time"); *Back,* 2013 COA 114 at ¶¶ 12–14, —— P.3d —— (issue concerning parole statutes would

but some indicate that the mootness exceptions simply allow a court to address a moot issue. *Compare Colorado–Ute Elec. Ass'n v. Pub. Utils. Comm'n,* 760 P.2d 627, 633 (Colo.1988) ("a case is not moot where the controversy is one 'capable of repetition, yet evading review' " (quoting *Goedecke v. State Dep't of Insts.,* 198 Colo. 407, 410, 603 P.2d 123, 124 n.5 (1979))), *and Colo. Office of Consumer Counsel v. Mountain States Tel. & Tel. Co.,* 816 P.2d 278, 281 (Colo.1991) (same), *and People v. Freeman,* 735 P.2d 879, 880 (Colo.1987) (same), *and Urevich v. Woodard,* 667 P.2d 760, 762 (Colo.1983) (same), *and Star Journal Publ'g Corp. v. Cnty. Court,* 197 Colo. 234, 236, 591 P.2d 1028, 1029 (1979) (same), *with People v. Quinonez,* 735 P.2d 159, 161 n.1 (Colo. 1987) (court would address moot issue because it was capable of repetition while evading review), *and In re Marriage of Slowinski,* 199 P.3d 48, 51 (Colo.App.2008) ("we can address moot questions involving ... issues capable of repetition yet evading review"). Because this semantic inconsistency was not raised by either party in this appeal, I note it merely for reference.

evade review because· "the time period that would elapse before this court could review the revocation would exceed the 180–day revocation period"); *Johnson v. Griffin*, 240 P.3d 404, 406 (Colo.App.2009) ("because of the tight timelines," issue would evade review); *People in Interest of L.O.L.*, 197 P.3d 291, 293 (Colo.App.2008) (issue evades review when the time between filing appeal and child's possible return to parental custody is short); *Slowinski*, 199 P.3d at 51 (issues would evade review "because of the short time frame of the statute"); *Tesmer v. Colo. High Sch. Activities Ass'n*, 140 P.3d 249, 252 (Colo.App.2006) ("because the duration of a 'season' of high school sports usually is only a few months, completing similar litigation within an athletic season is unlikely" and, therefore, issues would evade review); *Grossman*, 80 P.3d at 960 (issue would evade review because "in almost all instances, the [ 120–day legislative] session would 'end before this court could reach a decision"); *Derrick v. Colo. Bd. of Parole*, 747 P.2d 696, 697 (Colo.App.1987) (issue was not moot because it was capable of repetition and "potentially evasive of review").

## B. Capable of Repetition

I further conclude that the issues respondent raises are capable of repetition.

### 1. Meaning of "Capable of"

I have found no Colorado case defining "capable of repetition." Some cases have interpreted "capable of" to mean "can" or "may" while others appear to have interpreted it to mean "likely." *Compare Byrne v. Title Bd.*, 907 P.2d 570, 573 (Colo.1995) (issue was capable of repetition when an elector "might" be placed in the same position as petitioners), *and Tesmer*, 140 P.3d at 252 (issues were capable of repetition when students who have been diagnosed with attention deficit disorder "could" make similar claims in the future), *and People in Interest of Yeager*, 93 P.3d 589, 592 (Colo.App.2004) (issues were capable of repetition when future cases with short time frames "could" occur), *and Johnson*, 240 P.3d at 406 (an issue may be capable of repetition while evading review "even though the chance of

recurrence is remote"), *with Ofengand*, 183 P.3d at 691–92 (issue was capable of repetition because it was "likely" to recur), *and Carney v. Civil Serv. Comm'n*, 30 P.3d 861, 864 (Colo.App.2011) (issues were capable of repetition because it was "likely" that the predicate fact would recur).

Additionally, at least two Colorado cases can be read as interpreting "capable of" as meaning "certain." *See Bruce v. City of Colorado Springs*, 971 P.2d 679, 683 (Colo. App.1998) (issues were not capable of repetition when plaintiff had not demonstrated that the defendant "will not" comply with statutory requirements in future elections); *Bingo Games Supply Co. v. Meyer*, 895 P.2d 1125, 1129 (Colo.App.1995) (issue was not capable of repetition when the division would have to assume that the General Assembly "will" adopt future and similar legislation and that an agency "will not" comply with the rule-making procedure).

Indeed, there are multiple dictionary definitions, as well: "capable of" means "[a.] having the ability or capacity for: *a man capable of judging art*. [b.] open to the influence or effect of; susceptible of: *a situation capable of improvement*. [c.] predisposed to; inclined to: *capable of murder*." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 308 (2d ed.1998).

Nevertheless, I need not resolve whether "capable of repetition" means "can repeat," "may repeat," or "likely to repeat" because, as explained below, I conclude·that the issues respondent raises are capable of repetition under any of these definitions. However, to the extent that *Bruce* and *Bingo Games* can be read as defining "capable of repetition" to mean only "certain to repeat," *see Bruce*, 971 P.2d at 683; *Bingo Games*, 895 P.2d at 1129, I reject that definition. *See, e.g.,* RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY at 308.

### 2. Analysis

The underlying substantive questions raised in this appeal are whether there must be record evidence to support each element of the statutory definitions of "gravely disabled" and "danger to self" under sections 27–65–102(4.5) and (9)(a)-(b), C.R.S.2013, and

whether certified persons are entitled to receive treatment "suited to meet [their] individual needs, delivered in such a way as to keep [them] in the least restrictive environment, and delivered in such a way as to include the opportunity for participation of family members in [their] program of care and treatment," under section 27–65–116(1)(a), C.R.S.2013. *Cloverleaf Kennel Club, Inc. v. Colo. Racing Comm'n,* 620 P.2d 1051, 1054 (Colo.1980) ("While it is true ... that the precise factual circumstances in which this controversy arose are unlikely to recur, the underlying substantive question is one 'capable of repetition yet evading review.'" (quoting *Rocky Mountain Ass'n v. Dist. Court,* 193 Colo. 344, 345, 565 P.2d 1345, 1346 (1977))); *Freedom from Religion Found., Inc. v. Romer,* 921 P.2d 84, 88 (Colo. App.1996) ("When the underlying substantive issue is capable of repetition but will evade review, it is not moot even though the chance of recurrence is remote."); *accord Russell v. City of Central,* 892 P.2d 432, 435 (Colo.App. 1995).

These underlying substantive issues may repeat for respondent or for other certified individuals so long as the statute remains in effect. *See Trinidad Sch. Dist. No. 1,* 963 P.2d at 1102 (issue concerning constitutionality of suspicionless drug testing was capable of repetition when the policy remained in effect); *Colorado–Ute Elec. Ass'n,* 760 P.2d at 634 (issues were capable of repetition when the energy rate, which gave rise to the controversy, was still in use); *Boulder Valley Sch. Dist. RE–2 v. Colo. State Bd. of Educ.,* 217 P.3d 918, 922–23 (Colo.App.2009) (issues were capable of repetition when the legislative authority given to the school district— which seemingly resolved the controversy— was not permanent and could be terminated); *Grossman,* 80 P.3d at 960 (issue was capable of repetition when the allegedly unlawful conduct was the product of a legislative rule that was still in effect); *cf. Davidson v. Comm. for Gail Schoettler, Inc.,* 24 P.3d 621, 623 (Colo.2001) (once a statute has been repealed, issues concerning interpretation of

the statute are presumptively moot, absent some express circumstance that dictates otherwise).

I also conclude that such issues are likely to repeat for respondent because the record indicates that, like the respondent in *People in Interest of King,* 795 P.2d 273, 274 (Colo. App.1990), he was hospitalized multiple times prior to this certification.[2] *See id.* ("The record here reflects that [respondent] had been hospitalized three times prior to the one in question. Under such circumstances, we conclude that this case meets the [capable of repetition] criteria ...."); *see also Simpson,* 69 P.3d at 71 (issue was capable of repetition where it had arisen three times before).

Additionally, in his supplemental brief, respondent states that he "has been subject to compulsory institutionalizations previously (with one occurring just six weeks prior to the one at issue in this proceeding)." *See Russell,* 892 P.2d at 435 ("For the purpose of our [mootness] discussion, we accept as true the affidavit and representations of counsel."); *cf. L.O.L.,* 197 P.3d at 293 ("To show the matter is not moot, the [appellant] must offer facts in the supplemental brief demonstrating [that the matter is not moot]."). This statement further supports the record evidence of prior hospitalizations.

Finally, even if the underlying substantive issues were not such generally applicable legal issues, I conclude that, based on *King,* these issues are capable of repetition. In *King,* the division reviewed whether the fact-specific evidence presented at the certification hearing was sufficient to support the district court's finding that the respondent was a "danger to others," pursuant to the certification statute. *King,* 795 P.2d at 274– 75. The division concluded that it was. *Id.* Thus, even without a generally applicable underlying substantive issue, the division concluded that, as here, because of the respondent's prior hospitalizations, the issue was capable of repetition. *Id.*

2. For example, the psychiatrist testified about respondent's multiple hospitalizations and also stated that respondent had had "several other admissions to psychiatric facilities and to step down or ACU [acute care] units." Respondent's mother likewise testified that respondent had been previously hospitalized multiple times.

### C. Majority's Reasoning

The majority concludes that, for two reasons, respondent's appeal is not capable of repetition while evading review and, therefore, moot: (1) respondent "is not seeking review of a procedural matter related to his treatment"; and (2) unlike the record in *King*, the record here does not disclose "how many times [respondent] has been committed previously." I disagree with this reasoning.

First, I know of no cases holding that the question of whether a mental health issue is capable of repetition turns on whether the respondent is seeking review "of a procedural matter related to his treatment." [3] To the contrary, the division in *King* concluded that the nonprocedural, sufficiency-of-the-evidence question was capable of repetition. *See id.* Indeed, I know of no reason why such a distinction should be drawn when nonprocedural issues may nevertheless be capable of repetition. *See, e.g., People v. Brockelman*, 933 P.2d 1315, 1318–21 (Colo. 1997) (issue of whether defendant's probation condition was reasonably related to his conviction was capable of repetition while evading review); *Tesmer*, 140 P.3d at 252 (issues, which were not procedural, were capable of repetition); *Carney*, 30 P.3d at 864 (issue concerning legality of specific component of a civil service exam was capable of repetition when a similar component had been struck down, and Commission later used the component at issue).

Second, the majority distinguishes *King* by stating that, "In [*King*], the division addressed a patient's challenge to a short-term commitment order because the record reflected that he had been repeatedly subject to short-term treatment orders," whereas "the record [here does not] disclose how many times [respondent] has been committed previously." In contrast, I read *King* as resolving the "capable of repetition" question based on the respondent's prior *hospitalizations* and not on prior short-term treatment orders. Specifically, the *King* division stated: "The record here reflects that [respondent] had been hospitalized three times prior to the one in question. Under such circumstances, we conclude that this case meets the [capable of repetition] criteria...." *King*, 795 P.2d at 274 (emphasis added). As discussed, respondent here has likewise been hospitalized multiple times prior to the one in question.

In summary, I conclude that the issues raised by respondent are capable of repetition while evading review and are, therefore, not moot. *See, e.g., Colorado–Ute Elec. Ass'n*, 760 P.2d at 633 ("a case is not moot where the controversy is one 'capable of repetition, yet evading review'"). Accordingly, I would review the merits of respondent's contentions as follows. *See People v. Poindexter*, 2013 COA 93, ¶ 75, 338 P.3d 352 (J. Jones, J., specially concurring) (reviewing merits of appellant's contention when concurring judge believed the majority's legal conclusion, which was the basis for the majority's declining to address merits, was erroneous).

### II. Evidentiary Sufficiency

Respondent argues that there is insufficient evidence to support the court's finding that he is gravely disabled, as that term is defined by statute.[4] I agree.

Appellate courts review de novo whether there is sufficient evidence to support a court's finding that a respondent is gravely disabled, viewing the evidence in its entirety

---

**3.** I have found no cases distinguishing between "procedural" issues and "fact-specific" issues. However, when plaintiffs seek declaratory and injunctive relief, Colorado courts do distinguish, for mootness purposes, between such relief based on peculiar facts that have already occurred and relief not based on peculiar, historic facts. *See Freedom from Religion Found.*, 921 P.2d at 88 ("When, as here, the conduct sought to be redressed by declaratory or injunctive relief is peculiar to a particular event that has already occurred, the occurrence of the event will moot the controversy.... [P]laintiffs here do not seek a declaration as to any general statute, ordinance, or regulation ...."); *accord State Bd. of Chiropractic Examiners v. Stjernholm*, 935 P.2d 959, 970 (Colo.1997); *Carney*, 30 P.3d at 864.

**4.** Respondent also argues that, because there is insufficient evidence to find him gravely disabled, the court "abused its discretion" in making that determination. However, evidentiary insufficiency is itself a basis for reversal, so I need not consider whether the court abused its discretion.

and in the light most favorable to the People. *See Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1106 (Colo.App.2004).

### A. Relevant Legal Standards

As relevant here, section 27–65–107 provides that a person may be certified for involuntary mental health treatment not to exceed three months if, among other things, "[t]he professional staff of the agency or facility providing seventy-two-hour treatment and evaluation has analyzed the person's condition and has found the person has a mental illness and, as a result of the mental illness, is a danger to others or to himself or herself or is gravely disabled." § 27–65–107(1)(a), C.R.S.2013.

However, a person certified for involuntary mental health treatment under section 27–65–107 "may at any time file a written request that the certification for short-term treatment or the treatment be reviewed by the court or that the treatment be on an outpatient basis," and "the court shall hear the matter within ten days after the request." § 27–65–107(6), C.R.S.2013. At such a hearing,

> [t]he burden of proof shall be upon the person or facility seeking to detain the respondent. The court or jury shall determine that the respondent is in need of care and treatment only if the court or jury finds by clear and convincing evidence that the person has a mental illness and, as a result of the mental illness, is a danger to others or to himself or herself or is gravely disabled.

§ 27–65–111(1), C.R.S.2013.

"Gravely disabled" is statutorily defined. As relevant here, the statute provides:

> (9)(a) "Gravely disabled" means a condition in which a person, as a result of a mental illness:
>
> (I) Is in danger of serious physical harm due to his or her inability or failure to provide himself or herself with the essential human needs of food, clothing, shelter, and medical care; or
>
> (II) Lacks judgment in the management of his or her resources and in the conduct of his or her social relations to the extent

that his or her health or safety is significantly endangered and lacks the capacity to understand that this is so.

> (b) A person who, because of care provided by a family member or by an individual with a similar relationship to the person, is not in danger of serious physical harm or is not significantly endangered in accordance with paragraph (a) of this subsection (9) may be deemed "gravely disabled" if there is notice given that the support given by the family member or other individual who has a similar relationship to the person is to be terminated and [if four other conditions, which are not relevant here, are satisfied].

§ 27–65–102(9)(a)-(b).

Appellate courts must strictly construe the statutory civil commitment provisions to the extent that they curtail one's personal liberty, *see Hoylman*, 865 P.2d at 921, while at the same time liberally construing the provisions to the extent that they carry out the General Assembly's stated purposes for enacting the legislation, *see* § 27–65–101(2), C.R.S.2013.

As relevant here, the General Assembly's stated purposes in enacting the civil commitment statutes are, among others:

- To deprive a person of his or her liberty "only when less restrictive alternatives are unavailable and only when his or her safety or the safety of others is endangered";
- To encourage using "voluntary rather than coercive" measures in providing treatment and care for those with mental illnesses, and to provide such treatment and care "in the least restrictive setting";
- To encourage family members to participate in caring for and treating those with a mental illness;
- To provide "the fullest possible measure of privacy, dignity, and other rights to persons undergoing care and treatment for mental illness";
- "To facilitate the recovery and resiliency of each person who receives care and treatment" under the civil commitment statutes; and

● To secure care and treatment for each mentally ill person that is "suited to the needs of the person."

§ 27–65–101(1)(a)–(d), (f)–(g), C.R.S.2013.

### B. Analysis

I conclude that there is insufficient evidence to support a finding that respondent is gravely disabled under section 27–65–102(9)(a)(I)'s "inability or failure to provide" requirements.

Under subsection (9)(a)(I), a person is gravely disabled if he or she is unable or fails to provide himself or herself with the essential human needs of food, clothing, shelter, and medical care, and, as a result, the person is in danger of serious physical harm. Additionally, because section 27–65–102(9)(b) indicates that a person may not be in danger of serious physical harm or significantly endangered under subsection (9)(a) because of care provided by a family member, such care is relevant to the determination of whether one is gravely disabled under subsection (9)(a)(I).

Here, there is insufficient evidence that respondent is unable or fails to provide himself with all the statutorily enumerated essential needs. For example, the psychiatrist testified that respondent is able to feed and clothe himself. *See* § 27–65–102(9)(a)(I). There is also no record evidence indicating that respondent is not able or fails to provide himself with food. Additionally, there is no record evidence indicating that, even if respondent were unable or were failing to provide himself with all the enumerated essential needs, such an inability or failure is causing him to be in danger of serious physical harm. *See id.*

There is also insufficient evidence to support a finding that respondent is gravely disabled under section 27–65–102(9)(a)(II)'s "lacks judgment" requirements.

Under subsection (9)(a)(II), a person is gravely disabled if: (1) he or she lacks judgment in the management of his or her resources; (2) he or she lacks judgment in the conduct of his or her social relations; (3) his or her health or safety is significantly endangered by his or her lack of judgment in the management of his or her resources and in the conduct of his or her social relations; and (4) he or she lacks the capacity to understand that his or her health or safety is significantly endangered by such lack of judgment. § 27–65–102(9)(a)(II). Additionally, because section 27–65–102(9)(b) indicates that a person may· not be in danger of serious physical harm or significantly endangered under subsection (9)(a) because of care provided by a family member, such care is also relevant to the determination of whether one is gravely disabled under subsection (9)(a)(II).

Here, there is no record evidence addressing respondent's judgment in managing his resources, nor any evidence that such lack of judgment endangers his health or safety. *See* § 27–65–102(9)(a)(II). Moreover, the only evidence concerning respondent's social relations was the psychiatrist's testimony that respondent either remains isolated in his room or briefly comes out into the community area where he struggles to interact and communicate effectively, and that he has touched people's heads when he is very anxious. Even if I were to assume for argument's sake that this conduct constituted a "lack[ ] [of] judgment ... in the conduct of his ... social relations," there is no record evidence indicating that his health or safety is significantly endangered by such conduct. § 27–65–102(9)(a)(II).

Moreover, when asked at the hearing whether, as a result of his mental illness, respondent is gravely disabled, a danger to himself, or a danger to others, the psychiatrist replied only that respondent is a danger to himself. Indeed, the psychiatrist did not testify that respondent is gravely disabled, nor did anyone else so testify.

Thus, viewing the evidence in its entirety and in the light most favorable to the People, I conclude that it is insufficient to support the finding that respondent is gravely disabled, as that term is defined by statute. *See Parr,* 107 P.3d at 1106.

### C. District Court's Alternative Basis for Upholding the Certification

Although I conclude that there is insufficient evidence to support the finding that he is gravely disabled, I note that the district court also found that respondent is a danger

to himself. However, I need not analyze whether sufficient evidence supports this finding because this was not the basis for respondent's certification. Rather, the certification states that respondent is certified because he is "gravely disabled" as a result of his mental illness.

Nevertheless, even if "danger to self" had been the basis for respondent's certification, I would conclude that there is insufficient evidence to support such a finding.

"Danger to self" is a statutorily defined term:

(4.5) "Danger to self or others" means:

(a) With respect to an individual, that the individual poses a substantial risk of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm to himself or herself; or

(b) With respect to other persons, that the individual poses a substantial risk of physical harm to another person or persons, as manifested by evidence of recent homicidal or other violent behavior by the person in question, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt, or threat to do serious physical harm by the person in question.

§ 27–65–102(4.5).

Here, there is no record evidence indicating that respondent has ever threatened or attempted suicide or serious bodily harm to himself. Indeed, the psychiatrist testified that respondent has not made any suicidal or homicidal threats, nor has he threatened or engaged in any violent behavior.

Although the record indicates that respondent twice left his treatment facility, there is no record evidence that he was harmed by these two departures. Rather, the psychiatrist testified, "My fear is that he would place himself in increased harm by just simply running from unseen pursuers." He also agreed that the sole threat respondent poses to himself is "the possibility that can happen when he wanders from time to time." However, there is no record evidence to indicate that it is probable, let alone highly probable, that respondent's walking outside will harm him. *See In re Estate of Wiltfong*, 148 P.3d 465, 468 (Colo.App.2006) ("Clear and convincing evidence is stronger than a mere preponderance; it is highly probable evidence free from serious or substantial doubt.").

III. Respondent's Rights to Be Treated Consistently with Section 27–65–116(1)(a)

Respondent further contends that the district court violated his rights under section 27–65–116(1)(a) to receive treatment "suited to meet his ... individual needs, delivered in such a way as to keep him ... in the least restrictive environment, and delivered in such a way as to include the opportunity for participation of family members in his ... program of care and treatment." § 27–65–116 (1)(a). Although I agree that respondent is entitled to be treated consistently with the requirements he cited in section 27–65–116(1)(a), I would not address whether the district court erred on this basis because, as discussed, I believe reversal is required on the basis that there is insufficient evidence to support respondent's certification. *See In re Marriage of Leverett*, 2012 COA 69, ¶ 24, 318 P.3d 31.

Accordingly, because I conclude that the issues raised in this appeal are capable of repetition while evading review, and therefore not moot, I would reach the merits of respondent's appeal and reverse the district court's order.