26CA0234 Peo in Interest of Fairchild 04-16-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0234
City and County of Broomfield District Court No. 25MH11
Honorable Jeffrey Smith, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Kenneth Fairchild,

Respondent-Appellant.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE GOMEZ
Pawar and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 16, 2026

---

Nancy D. Rodgers, City and County Attorney, Courtney Thiemann, Senior Assistant City and County Attorney, Broomfield, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Respondent, Kenneth Fairchild, appeals the district court's order extending his certification for long-term mental health treatment at the Colorado Mental Health Hospital at Fort Logan (Fort Logan).  We affirm.

## I.    Background

¶ 2    In August 2023, Fairchild was admitted to the Colorado Mental Health Hospital in Pueblo (the hospital) for restoration treatment after being found incompetent to proceed in a criminal case.  About a year and a half later, the criminal court ordered that Fairchild be evaluated for a civil commitment, and the hospital petitioned for short-term mental health treatment.  Providers at the hospital reported that Fairchild had displayed a "persistent and complex persecutory delusional system," including beliefs that he was being remotely monitored, was being stalked, and had devices implanted in his body.

¶ 3    In April 2025, hospital providers requested that Fairchild's short-term certification be extended.  A few months later, the criminal court dismissed Fairchild's criminal charges, finding that he could not be restored to competency.  Hospital providers then petitioned for long-term mental health treatment, alleging that

Fairchild was a danger to others and gravely disabled. Fairchild stipulated to the long-term certification, which the court entered in July 2025.

¶ 4 In October 2025, Fairchild was transferred from the hospital to Fort Logan. Fairchild's treating physician at Fort Logan then requested an extension of the long-term certification. The district court held a hearing in January 2026, at which Dr. Jaclyn Bala (one of Fairchild's treating physicians) and Fairchild testified. After hearing the evidence, the court found that Fairchild was a danger to others and gravely disabled, and it granted the request for an extension of the long-term certification. This appeal followed.

## II. Long-Term Certification

¶ 5 Fairchild asserts that the district court erred by extending the long-term certification because he was not a danger to others or gravely disabled. We are not persuaded.

¶ 6 When a patient challenges the sufficiency of the evidence, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. As the fact finder, the district court determines the sufficiency, probative effect, and weight of the

evidence, along with the inferences and conclusions to be drawn from it. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7. We must defer to the district court's factual findings if they have record support, but we review its legal conclusions de novo. *R.K.L.*, ¶ 13.

¶ 7 To authorize long-term certification for mental health treatment, the district court must find, among other things, that the patient has a mental health disorder and, as a result of that disorder, is (1) a danger to others; (2) a danger to themself; or (3) gravely disabled. § 27-65-110(1)(a), C.R.S. 2025. As relevant here, a person is a danger to others when the person "poses a substantial risk of physical harm to another person or persons, as manifested by evidence of recent homicidal or other violent behavior by the person in question." § 27-65-102(10)(b), C.R.S. 2025.

¶ 8 At the hearing, Dr. Bala testified that she had diagnosed Fairchild with a delusional disorder, mixed type, with "grandiose and persecutory delusions." She explained that people with delusional disorders have "fixed beliefs that are false" but otherwise their "behavior is not bizarre" or "odd" in any way. According to Dr. Bala, Fairchild had a delusion that an employer had "drugged

3

him and implanted a chip in his body," which the employer then used to control him.

¶ 9     Dr. Bala opined that, even though Fairchild hadn't acted violently or threatened anyone while he'd been hospitalized, he continued to be a danger to others. She explained that, before his hospitalization, Fairchild had made "over 130 . . . police reports" about the person he believed was controlling him, but because the police didn't do anything about it, he took matters into his own hands, which led to his criminal case and charges of attempted murder. She also testified that Fairchild continued to hold the same delusional belief; that he still expressed concern over the same person's supposed exertion of control over him; and that if he were released, he would pose a danger to others in the community.

¶ 10    To support her opinion, Dr. Bala explained why Fairchild was at such high risk of committing violence. To begin, she noted that, in conducting a violence risk assessment, "the single best predictor of future violence is past violence." She then explained that Fairchild's past violent acts were "predatory" rather than "reactive" because his actions took "careful planning and time" and that past predatory violence presents a greater risk of being repeated than

4

reactive violence. She also explained that Fairchild's delusions were "systemized" and associated with fear, anger, and anxiety, which increases the likelihood of aggression.

¶ 11 Finally, Dr. Bala testified as to why Fairchild's lack of violence in the hospital wasn't a good predictor of his risk in the community. Specifically, she noted that the hospital is a "restricted setting" where "other people can't just walk in." She also said that Fairchild had told staff at the hospital in Pueblo that he "felt safe there" because it was "out of the zone of his electronic tracking." Thus, she opined that Fairchild's risk of physical harm to others was directly related to whether he was in the community.

¶ 12 For his part, Fairchild testified that he didn't believe he was a danger to others, he didn't have any intentions of harming anyone if released from Fort Logan, and no one had any reason to be afraid of him. He also claimed that he didn't think anyone was "out to get" him. Yet he continued to deny that he had a mental illness, even though he said he would take medication and "do whatever a doctor recommends" to get out of Fort Logan.

¶ 13 The district court determined, among other things, that Fairchild was a danger to others. In reaching this decision, the

5

court found that, to the extent that there were conflicts in the testimony, Dr. Bala's testimony was more credible than Fairchild's, given "all the evidence presented, the totality of circumstances, and the [c]ourt's review of other materials." The court then noted the allegations that had resulted in Fairchild's criminal charges and found that Fairchild "still has the same types of delusional beliefs" that he had acted on before. The court also relied on Dr. Bala's opinions about predictors of violence to decide that Fairchild would be a danger to others if he didn't continue in his long-term care and in-patient treatment.

¶ 14    On appeal, Fairchild asserts that there was insufficient evidence that he was a danger to others because he testified that he was not a danger to others. But the district court didn't find his testimony credible. And we "must defer to the court's credibility determinations and its weighing of conflicting evidence." *People in Interest of Ramsey*, 2023 COA 95, ¶ 30.

¶ 15    Fairchild also contends that the evidence was insufficient because it established that he hadn't exhibited any behavioral problems while in the hospital or Fort Logan. We are not convinced, particularly given that Fairchild had previously

committed violent acts because of his delusion that an employer was controlling his actions, the evidence showed that he continued to hold the same delusion, and Dr. Bala opined that his delusion was connected to his violent behavior such that the behavior was likely to recur if he were returned to the community. *See People in Interest of King*, 795 P.2d 273, 275 (Colo. App. 1990) ("[B]ased on the totality of the evidence[,] including the psychologist's professional opinion as to respondent's potentiality for danger, the court was justified in ordering continued involuntary treatment."); *see also R.K.L.,* ¶¶ 21-23 (relying in part on a doctor's testimony about violent behavior over a year earlier in affirming a finding that the respondent continued to be a danger to others); *People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992) (same).

¶ 16    Therefore, viewed in the light most favorable to the People, we conclude that the evidence was sufficient to establish that Fairchild was a danger to others as defined in section 27-65-102(10)(b). *See R.K.L.,* ¶¶ 13, 25;.

¶ 17    Finally, because the statute requires a showing of grave disability *or* dangerousness, § 27-65-110(1)(a), we need not reach the issue of whether Fairchild was also gravely disabled. *See*

7

*Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) ("Generally, we presume the disjunctive use of the word 'or' marks distinctive categories.").

## III. Disposition

¶ 18    The order is affirmed.

JUDGE PAWAR and JUDGE JOHNSON concur.