The PEOPLE of the State of Colorado, Petitioner–Appellee,

In the Interest of Gunda OFENGAND, Respondent–Appellant.

No. 07CA0845.

Colorado Court of Appeals, Div. III.

April 3, 2008.

David A. Roth, County Attorney, Pueblo, Colorado, for Petitioner–Appellee.

Synthia Morris, Colorado Springs, Colorado, for Respondent–Appellant.

Opinion by Judge LOEB.

Respondent, Gunda Ofengand, appeals the order of the district court granting the People's petition for the involuntary administration of medications. We reverse.

## I. Background

While attending college at the University of Colorado, respondent suffered two separate brain injuries in 1989. According to a treating psychologist who knew her at the time, respondent became paranoid and delusional sometime after suffering the brain injuries. Prior to her first injury, respondent was apparently a bright college student.

In 2006, respondent was charged with first degree trespass and criminal mischief in Boulder County. In November 2006, the Boulder County Court entered an uncontested order finding respondent incompetent to proceed and incapable of understanding the nature and course of the proceedings against her, assisting in her defense, or cooperating with defense counsel. As a result of these findings, the court ordered that respondent be committed to the custody of the Colorado Mental Health Institute at Pueblo (CMHI).

On February 28, 2007, the People filed a petition for review of respondent's refusal of treatment, alleging that respondent had refused medication on grounds that were overridden by her need for treatment. The next day, the district court appointed an attorney to represent respondent and scheduled a hearing on the People's motion for March 5. The hearing was conducted on March 26, 2007, after several continuances granted at respondent's request.

When the hearing began, respondent's attorney advised the court that respondent wished to represent herself. The court assured respondent that she would have the opportunity to speak on her own behalf even if she was represented by counsel, and gave her additional time to confer with her appointed counsel off the record. When the court was back on the record, respondent's counsel advised the court that respondent wanted to represent herself because, despite the court's previous denial of any further continuance, she wanted her attorney to seek another continuance, which her attorney refused to do.

The court then sought the opinion of respondent's treating psychiatrist regarding whether respondent was capable of deciding if she should be represented by an attorney. Her psychiatrist stated that he was concerned that respondent was not "really sure that she's got criminal charges in the two criminal proceedings against her" and that he was "not sure that she's got a good feel for the realities of the courtroom."

The court then addressed respondent's appointed counsel and asked her if this was a typical case where an attorney could stand by and give advice as needed. Counsel responded that it was, but indicated that respondent was asking her to seek another continuance, essentially "so she doesn't have to proceed with [the] hearing." Counsel further advised the court, "[I have] scheduled and ... spent quite of bit of time with her and yet she's telling the Court that she has

not met with me and didn't have a chance to discuss [the case]."

Without addressing respondent, the court allowed her to represent herself, stating that it "would appreciate it if [counsel] could stand by for legal advice if she asks [for] it." Counsel agreed, and the court allowed the People to call the first witness.

The People called respondent's treating physician, who testified about her mental condition and refusal to take medication. He testified that he had diagnosed her condition as delusional disorder and, because of the condition, respondent had unreasonably refused to submit to medical tests that were in her best interest. He opined that the administration of certain involuntary medications would allow respondent to think more clearly about her refusal to submit to the medical tests.

The district court agreed, finding in a written order that respondent "is incompetent to effectively participate in decisions regarding her mental illness." The court also found that the proposed treatment was necessary, that no less intrusive method of treatment was available, and that respondent "does not have a legitimate reason for refusing medications and [her] desire to refuse medications is outweighed by her need for the medications." Accordingly, the court entered an order authorizing the involuntary administration of medications. By its own terms, the order was set to expire in six months on September 26, 2007.

Respondent filed this appeal on May 3, 2007. She essentially asserts two contentions on appeal—(1) that her waiver of counsel at the treatment hearing was invalid and (2) that the People failed to produce sufficient evidence to support the district court's order.

We agree with the People's threshold contention that this appeal is now moot. However, we choose to resolve the merits of respondent's contention that she made an invalid waiver of counsel, because we conclude it involves an issue that is capable of repetition, yet evading review. Because of our resolution of this matter, we need not address respondent's remaining contention concerning the sufficiency of the evidence.

## II. Mootness

■ While this appeal was pending, the order of the district court granting the People's petition for involuntary medication expired. In their answer brief on appeal, the People state that they did not seek to renew the order and that respondent was released from CMHI on May 18, 2007. Respondent does not dispute these assertions. The People claim this appeal is therefore moot. Because we conclude the issue of waiver of the right to counsel in this context is capable of repetition, yet evading of review, we elect to resolve it.

■ Generally, a court invokes its judicial power only when an actual controversy exists between adverse parties. An issue becomes moot when the relief granted by the court would not have a practical effect upon an actual and existing controversy. *Trinidad Sch. Dist. No. 1 v. Lopez*, 963 P.2d 1095, 1102 (Colo.1998). When an issue is moot, a court normally refrains from addressing it. *Grossman v. Dean*, 80 P.3d 952, 960 (Colo. App.2003); *Am. Family Mut. Ins. Co. v. Centura Health–St. Anthony Cent. Hosp.*, 46 P.3d 490, 493 (Colo.App.2002) (if an issue has become moot because of subsequent events, an appellate court will decline to render an opinion as to the merits of an appeal).

■ There are two exceptions to the mootness doctrine. First, a court may resolve what is an otherwise moot case when the issue involved is one that is capable of repetition, yet evading review. Second, a court may decide a moot case involving issues of great public importance or recurring constitutional violations. *Grossman*, 80 P.3d at 960 (citing *Dempsey v. Romer*, 825 P.2d 44 (Colo.1992)).

We elect to resolve the issue of whether respondent validly waived her right to counsel because, in our view, it is one capable of repetition, yet evasive of our review. *See Gilford v. People*, 2 P.3d 120, 124 (Colo.2000) (applying capable of repetition exception to mootness doctrine in context of civil commitment statute); *Goedecke v. State*, 198 Colo.

407, 410 n. 5, 603 P.2d 123, 124 (1979)(same). The record here suggests that respondent's desire to represent herself may have been triggered by an inability to trust or cooperate with professionals assigned to assist and care for her that in future proceedings will likely produce the same desire for self-representation. Respondent's apparent inability to trust or cooperate with professionals is not uncommon in similarly situated individuals. *See, e.g., In re C.S.*, 713 N.W.2d 542, 544–45 (N.D.2006). In addition, the issue here will repeatedly escape our review because the duration of the type of order challenged here cannot exceed six months. *See* § 27–10–109(4), C.R.S.2007; *People v. Medina*, 705 P.2d 961, 974 (Colo.1985); *Grossman*, 80 P.3d at 960.

### III. Standard of Review

■ Civil commitment proceedings are special proceedings conducted according to statutorily defined procedures. *Gilford*, 2 P.3d at 124–25; *see* §§ 27–10–105 to–111, C.R.S.2007. The same statutorily defined procedures have been applied to hearings involving the issue of nonconsensual treatment with antipsychotic medication. *Medina*, 705 P.2d at 972–74. Proceedings brought pursuant to sections 27–10–105 to—111 are not criminal in nature and are not designed to address criminal conduct. *Gilford*, 2 P.3d at 124–25.

Pursuant to these procedures, an indigent, involuntarily committed patient has a statutory right to counsel at hearings involving nonconsensual antipsychotic medication treatment. § 27–10–107(5), C.R.S.2007; *Medina*, 705 P.2d at 972. A patient may validly waive the right to counsel if he or she makes the waiver "knowingly and intelligently . . . in writing and filed with the court by the respondent." § 27–10–107(5).

■ The parties cite no Colorado authority, and we find none, addressing the principles applied to assess the validity of a respondent's waiver of counsel and the effect of an invalid waiver on an order authorizing involuntary medication. Although the parties cite authority setting forth principles for assessing the validity of a waiver under the Sixth Amendment, *see Faretta v. California*,

422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *People v. Arguello*, 772 P.2d 87 (Colo. 1989), we analyze the validity of a waiver here under a different standard because civil commitment proceedings in Colorado are not criminal in nature, and the right to counsel is statutorily derived, rather than derived from the Sixth Amendment. *See, e.g., United States v. Veltman*, 9 F.3d 718, 721 (8th Cir. 1993); *cf. People v. Turley*, 109 P.3d 1025, 1026 (Colo.App.2004)(holding that rule regarding right to confrontation derived from Sixth Amendment is not applicable to analysis of right to confrontation under Fourteenth Amendment). *But see C.S.*, 713 N.W.2d at 546–48 (applying principles of waiver analysis used in criminal context to waiver in mental health commitment context). Because a committed patient's right to counsel during civil commitment proceedings is derived from the civil commitment statutes, we analyze any defect in a respondent's waiver of counsel under the standard applicable to statutory defects in civil commitment proceedings. *See Gilford*, 2 P.3d at 125; *People in Interest of Clinton*, 762 P.2d 1381, 1389 (Colo.1988)(addressing contention involving appointment of counsel in civil commitment proceedings); *cf. People in Interest of C.H.*, 166 P.3d 288, 290–91 (Colo.App.2007) (in evaluating claim of ineffective assistance of counsel in termination of parental rights proceeding, Colorado courts employ the same test that governs claims of ineffective assistance of counsel in criminal cases).

Also, in accord with the supreme court's analysis in *Medina*, we perceive a constitutional analysis under the Due Process Clause unnecessary, because Colorado's statutory scheme relating to involuntary commitment of the mentally ill recognizes a right to counsel. *See Medina*, 705 P.2d at 967. The statutory scheme also requires that a waiver of counsel be made knowingly, intelligently, and in writing. *See* § 27–10–107(5).

■ Where a respondent seeks the reversal of a civil commitment order based on the failure to comply strictly with statutory requirements, and where the defect, if any, does not implicate the jurisdiction of the district court to grant the order, we inquire "whether the defect concerns a failure to

comply with essential statutory provisions grave enough to 'undermine confidence in the fairness and outcome of the certification proceedings.'" *Gilford*, 2 P.3d at 125–26 (quoting *Clinton*, 762 P.2d at 1389, and *People in Interest of Lynch*, 783 P.2d 848, 851 (Colo. 1989)). This inquiry includes (1) the evaluation of "the gravity of the deviation from statutory provisions, including a consideration of due process concerns"; and (2) a determination of "any prejudice to the respondent caused by the deviation." *Id.* at 126 (quoting *Clinton*, 762 P.2d at 1389, and *Lynch*, 783 P.2d at 852).

## IV. Waiver

Respondent contends the district court erred by allowing her to waive her right to counsel because she did not make a knowing and intelligent waiver. We agree.

■ Initially, we conclude the district court deviated from the statutory provision requiring a waiver of counsel to be made knowingly, intelligently, and in writing when it allowed respondent to represent herself at the treatment hearing. The record shows that the court limited its inquiry into respondent's competency to represent herself to a brief discussion with her treating psychiatrist. The psychiatrist advised the court that he was "not sure that [respondent had] a good feel for the realities of the courtroom."

Nevertheless, the court allowed respondent to represent herself after her court-appointed counsel agreed to stand by as advisory counsel. The record shows that the court never questioned respondent directly as to whether she knew the practical and legal consequences of her decision to waive counsel. Further, the court never questioned respondent as to whether she had the mental capacity to intelligently weigh such consequences against her desire to waive counsel. In our view, the record fails sufficiently to show that respondent entered a waiver of counsel knowingly and intelligently as required by section 27–10–107(5). Indeed, the People concede the district court "probably should have made a more probing inquiry" into respondent's capacity to waive counsel.

Moreover, the record also indicates that the court allowed respondent to waive counsel without filing a waiver in writing. The court thus deviated from the plain language of section 27–10–107(5) requiring a waiver of counsel to be made in writing and filed with the court by the respondent.

■ Because we conclude the district court deviated from the statutory requirements that a waiver of counsel at a treatment hearing be made knowingly, intelligently, and in writing, we next (1) evaluate "the gravity of the deviation from statutory provisions, including a consideration of due process concerns"; and (2) make a determination of "any prejudice to the respondent caused by the deviation." *Gilford*, 2 P.3d at 126 (quoting *Clinton*, 762 P.2d at 1389, and *Lynch*, 783 P.2d at 852).

As to the gravity of the district court's deviation from statutory provisions, respondent's invalid waiver of counsel, in our view, concerned a failure to comply with an essential statutory provision grave enough to undermine confidence in the fairness of the treatment hearing.

■ First, the statutory provision requiring a respondent's waiver of counsel to be made knowingly, intelligently, and in writing is an essential statutory provision in the context of a hearing involving a petition for involuntary administration of medication. The forced administration of antipsychotic medication is a significant intrusion on a patient's bodily integrity. *Medina*, 705 P.2d at 969. Accordingly, a patient has a qualified right to refuse medical treatment. *Id.* (citing *Goedecke*, 198 Colo. 407, 603 P.2d 123). The right to refuse medical treatment is rooted in both the common law and Colorado's statutory scheme relating to the civil commitment process. *Id.* at 967.

In this context, the right to counsel ensures that a patient's desire for autonomy over his or her own body is sufficiently articulated to a court that has been petitioned to authorize the involuntary administration of medications that carry a risk of serious side effects. *See id.* at 968 n. 3 (explaining side effects associated with antipsychotic medications). The qualified right to refuse medi-

cal treatment would be meaningless for many committed patients who, without counsel, would be personally responsible for articulating the basis for the refusal. Similarly, the right to refuse treatment would be meaningless for patients allowed to waive counsel without knowing the consequences of the waiver or being capable of intelligently appreciating them.

The right to counsel was the first general procedural protection applicable to a treatment hearing set forth by the supreme court in *Medina. Id.* at 972. Also, in considering the rights of a patient who is not present at the hearing or elects not to testify, the supreme court concluded the trial court was not required to talk with the patient and observe the patient's physical and mental condition. *Id.* Rather, the court reasoned that the "appointment of counsel for an indigent patient, along with other procedural safeguards outlined herein, will adequately safeguard the interest of the patient at the treatment hearing." *Id.* The statutory provisions securing the right to counsel at treatment hearings, including the provisions that ensure the right may only be waived knowingly and intelligently, are thus essential statutory provisions because they have alleviated the need for other procedural safeguards at treatment hearings.

Further, the defect here concerning a failure to comply with essential statutory provisions is also grave enough to undermine the fairness of the treatment hearing. We reach this conclusion because, in our view, it was inherently unfair to allow respondent to represent herself in a treatment hearing, which involves intricate layers of procedural protections and substantive elements, *see id.* at 972–74, where the People contended that she lacked the mental capacity to intelligently make medical decisions on her own behalf, without the court first ensuring on the record that she had the mental capacity to intelligently make legal decisions on her own behalf. Where, as here, the People sought a petition for involuntary administration of medications pursuant to procedural rules established under the assumption that the respondent will be represented by, or validly waive, counsel, the respondent's invalid waiver of counsel raises questions of fairness at every stage of the hearing.

As to any prejudice to respondent caused by the deviation, the People contend that respondent competently represented herself at the treatment hearing and was provided advisory counsel. Given the apparent contradiction between that contention and the People's assertion that respondent was incapable of making medical decisions on her own behalf, we conclude respondent has made a sufficient showing of prejudice.

Respondent cites to several parts of the record where she refrained from objecting to the admissibility of alleged hearsay statements and reports and contends that an attorney would have objected to such evidence. Considering the difficulty in proving what would have occurred at the treatment hearing had respondent been represented by counsel, and the gravity of the statutory deviation of allowing her to waive counsel without a showing that she made the waiver knowingly, intelligently, and in writing, *see* § 27–10–107(5), we are satisfied that respondent has demonstrated enough prejudice to undermine confidence in the outcome of the hearing. *See Gilford,* 2 P.3d at 125–26 (citing *Clinton,* 762 P.2d at 1389).

Over all, we conclude the district court deviated from statutory requirements when it allowed respondent to waive her right to counsel without ensuring on the record that she made the waiver knowingly, intelligently, and in writing. *See* § 27–10–107(5); *see also Medina,* 705 P.2d at 972. Further, after considering the gravity of the deviation and the resulting prejudice, we conclude that this deviation concerned a failure to comply with essential statutory provisions grave enough to undermine the confidence in the fairness and outcome of the treatment hearing. *See Gilford,* 2 P.3d at 125–26 (citing *Clinton,* 762 P.2d at 1389). The deviation is thus reversible error. *See id.* at 125.

The order granting the People's petition for the involuntary administration of medications is reversed.

Judge TAUBMAN and Judge HAWTHORNE concur.