COLORADO COURT OF APPEALS

Court of Appeals No. 15CA1139
Larimer County District Court No. 15CV30234
Honorable C. Michelle Brinegar, Judge

Mark R. Anderson, Charles L. Patrick, Alberta R. Patrick, Theodore G. Rossin, Andrea R. Mihajlov, Marcia R. Petrun, and Mark Petrun,

Petitioners-Appellants,

v.

Applewood Water Association, Inc., d/b/a Applewood Estates Homeowners Association,

Respondant-Appellee.

ORDER REVERSED IN PART, APPEAL DISMISSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE FREYRE
Taubman and Dailey, JJ., concur

Announced November 3, 2016

Herms & Herrera, LLC, David M. Herrera, Fort Collins, Colorado, for Plaintiffs-Appellants

CYLG, P.C., Christopher S. Maciejewski, Christopher A. Young, Denver, Colorado, for Defendant-Appellee

¶ 1    In this appeal from the trial court's order denying a motion for preliminary injunction, plaintiffs, Mark R. Anderson, Charles L. Patrick, Alberta R. Patrick, Theodore G. Rossin, Andrea R. Mihajlov, Marcia R. Petrun, and Mark Petrun (Owners), sought to enjoin the defendant, Applewood Water Association, Inc., d/b/a Applewood Estates Homeowners Association (Association), from performing two acts.  First, Owners sought to enjoin the Association from conducting special meetings of the board of directors (board) in violation of its bylaws, § 38-33.3-308(2.5), C.R.S. 2016, of the Colorado Common Interest Ownership Act (CCIOA), and § 7-128-203(2), C.R.S. 2016, of the Colorado Revised Nonprofit Corporations Act (CRNCA).  Second, Owners sought to enjoin the Association from submitting the "Amended and Restated Declaration of Covenants, Conditions and Restrictions of Applewood Estates" (Amended Declaration) for a full membership vote based on their belief that the Amended Declaration illegally conveyed their property rights in the bridle path easement to the Association and illegally expanded the scope of use of the easement without their consent.  Because, as a matter of first impression, we conclude the trial court could enjoin the Association from holding special board

1

meetings without providing the notice required under CCIOA and CRNCA, we reverse the trial court's order as to that preliminary injunction request and remand for further factual findings under *Rathke v. MacFarlane*, 648 P.2d 648, 653-54 (Colo. 1982). Based on the information provided in supplemental briefs filed by both parties, we conclude the second injunction request is moot because a vote on the Amended Declaration has already occurred. Therefore, we dismiss that portion of the appeal.

## I.      Background

¶ 2      This case involves a dispute between the Association and some individual lot owners over the board's decision, made in special meetings, to retain legal counsel to draft the Amended Declaration. Owners contend that the board conducted these special meetings without giving them the required notice and an opportunity to provide input. They also contend that the Amended Declaration unlawfully expands the use of the bridal path easement beyond its original intended use without their consent. Because the relevant facts are not disputed, we provide a brief history of the covenants and bylaws and then summarize the hearing evidence.

### A.      Covenants and Bylaws

¶ 3    In 1964, the Applewood Estates plat map was recorded with the Larimer County Clerk and Recorder and stated, "All Utility & Bridle Path Easements Are 10' On Each Side of Property Lines Unless Otherwise Noted." This map identified the lots in the subdivision that were subject to the easements.

¶ 4    Additionally, the Association was created as a nonprofit corporation, and it recorded a list of protective covenants. Covenant 9 related to easements and stated in relevant part:

> Easements for installation of utilities, drainage facilities, and bridal path(s) are served as shown on the recorded plat.
>
> . . .
>
> The easement area shall be maintained, at all times, by the owner of the plot appurtenant to it, to create a safe area for horsebackriding [sic].

¶ 5    Covenant 15 provided for amendments to the covenants by two-thirds approval of the association members.

¶ 6    The Association also created bylaws that set forth its purpose and rules for governance and specifically addressed special meetings of its members and of the board.[1] These bylaws required

---

[1] Owners comprise a subset of the Association's membership.

thirty days' notice to all members of regular and special meetings, and they permitted special meetings of the board upon giving reasonable notice to each director. The bylaws did not require notice of special board meetings to association members.

¶ 7 In 1983, the Association amended the original covenants by a two-thirds member vote and added several definitions relevant here. The amended covenants defined "Common Area" as all real property *owned by the Association* for the common use and enjoyment of the members. It separately defined "Easements" as designated areas used by horseback riders and hikers and for utilities. It defined "Common Facilities" as irrigation rights managed by the Association, easement paths designated on the recorded plats, and roads.

¶ 8 The amended covenants further stated that every member had a right to the enjoyment of the common areas, common facilities, and easements. They continued to require that the easements be maintained "by the owner of the plot appurtenant to it so as to create a safe area for horseback riding" and expanded the use of the easement to include hiking. They contained the added restriction that "no motorized vehicles will be allowed." The amended

4

covenants also permitted future amendment by two-thirds approval of the association members.

## B.     Hearing Evidence

¶ 9     In 2014, the board held special meetings to discuss, among other things, further amending the covenants. Witnesses testified that the board held these special meetings without providing notice. They stated that they learned of these meetings from the minutes posted thereafter.

¶ 10     Hours before the annual meeting, the board circulated a proposed copy of the Amended Declaration, which purported to alter the scope of the easements by expanding the activities that could be conducted in them. A membership vote was scheduled for June 2015.

¶ 11     The Amended Declaration contained a new provision entitled "Names & Description of Property/Easements" (Article 2). As relevant here, this article expanded the permissible uses of the easement to include all nonmotorized, muscle-powered activities (in addition to horseback riding and hiking). The Amended Declaration continued to require members to maintain the bridle paths appurtenant to their lots, "according to the Rules and Regulations

5

set by the Board of Directors," and continued to permit future amendment by two-thirds membership approval.

¶ 12 Owners learned of the special board meetings before the annual membership meeting scheduled in March 2015 and filed an action seeking declaratory relief that the board could not hold special meetings without proper notice, and that the easement could not be unilaterally altered. Contemporaneously, Owners filed the present action for a preliminary injunction. They asked the trial court to enjoin the Association from submitting the Amended Declaration for a vote and to enjoin the board from holding special meetings contrary to law, pending a decision on the merits of the case. Following a hearing, the court denied both requests.

## II. Preliminary Injunction

¶ 13 Owners make two contentions. First, they contend that the trial court erred as a matter of law when it found that it had no legal authority to enjoin future violations of civil statutes. Second, they contend that the court abused its discretion when it refused to enjoin the Association from modifying the covenants and expanding the use of the easement. We agree with their first contention and

conclude that a trial court may enjoin future violations of a civil statute. We find their second contention moot.

### A. Standard of Review and Applicable Law

¶ 14 We review a trial court's decision to grant or deny preliminary injunctive relief for an abuse of discretion. *Phx. Capital, Inc. v. Dowell,* 176 P.3d 835, 840 (Colo. App. 2007). We will overturn a trial court's decision on a motion for a preliminary injunction if the court made a legal error or the decision was manifestly arbitrary, unreasonable, or unfair. *Sanger v. Dennis,* 148 P.3d 404, 410 (Colo. App. 2006). If only legal, rather than factual, questions are at issue, we review the trial court's preliminary injunction ruling de novo. *Gitlitz v. Bellock,* 171 P.3d 1274, 1278 (Colo. App. 2007).

¶ 15 A preliminary injunction preserves the status quo or protects a party's rights pending the final determination of a cause. *Id.* (citing *City of Golden v. Simpson,* 83 P.3d 87, 96 (Colo. 2004)). Its purpose is to prevent irreparable harm prior to a decision on the merits of a case. *Id.* In considering a motion for a preliminary injunction, the trial court must find that the moving party has demonstrated (1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury that may be prevented by

injunctive relief; (3) lack of a plain, speedy, and adequate remedy at law; (4) no disservice to the public interest; (5) a balance of the equities in favor of the injunction; and (6) the injunction's preservation of the status quo pending a trial on the merits. *Id.* (citing *Rathke*, 648 P.2d at 653-54). If each criterion is not met, injunctive relief should not be granted. *Gitlitz*, 171 P.3d at 1278.

### B. Enjoining Prospective Law Violations

¶ 16 The parties agree that the Association is governed by CCIOA and CRNCA, both of which address special board meetings; however, they disagree about which provisions apply. The court did not resolve this issue or apply the *Rathke* factors to the issue of special board meetings because it found, as a matter of law, that it could not enjoin future violations of civil statutes. Because we conclude that CCIOA and CRNCA create a legally protected interest in open meetings and that the trial court may enjoin violations of their provisions, we remand the case for the court to make factual findings under *Rathke* and to determine whether Owners have satisfied their burden of showing the necessity of enjoining future special board meetings.

¶ 17    Resolving this issue involves our interpretation of CCIOA and CRNCA.  Because a court's primary duty is to give full effect to the General Assembly's intent, we begin by examining the statutes' plain language.  *Bd. of Cty. Comm'rs v. Hygiene Fire Prot. Dist.*, 221 P.3d 1063, 1066 (Colo. 2009).  We give words and phrases their plain and ordinary meanings and, where clear, apply the statute as written.  *The Triple Crown at Observatory Vill. Ass'n v. Vill. Homes of Colo., Inc.*, 2013 COA 150M, ¶ 10.  Where two statutes address the same subject, we construe them together, seeking to avoid inconsistencies and to reconcile conflicts.  *Hygiene Fire Prot. Dist.*, 221 P.3d at 1066.

¶ 18    Our General Assembly enacted CCIOA to encourage the establishment of homeowners' associations.  *Platt v. Aspenwood Condo. Ass'n*, 214 P.3d 1060, 1064 (Colo. App. 2009).  "[I]t is in the best interests of the state and its citizens to establish a clear, comprehensive, and uniform framework for the creation and operation of common interest communities . . . ."  § 38-33.3-102(1)(a), C.R.S. 2016.  "[T]he continuation of the economic prosperity of Colorado is dependent upon the strengthening of homeowner associations in common interest communities . . . ."

§ 38-33.3-102(1)(b).  Thus, "it is the policy of this state to promote effective and efficient property management through defined operational requirements that preserve flexibility for such homeowner associations."  § 38-33.3-102(1)(d).

¶ 19    To this end, § 38-33.3-114(2), C.R.S. 2016, empowers courts to enforce CCIOA's provisions.  *Id.* ("Any right or obligation declared by this article is enforceable by judicial proceeding.").  Where not inconsistent with CCIOA, courts have the power to apply supplemental general principles of law, including the law of corporations and the law of equity.  *See* § 38-33.3-108, C.R.S. 2016 (CCIOA is supplemented by "[t]he principles of law and equity, including, but not limited to, the law of corporations and unincorporated associations, [and] the law of real property.").  Moreover, remedies should be "liberally administered" to ensure that an aggrieved party "is put in as good a position as if the other party had fully performed."  § 38-33.3-114(1).

¶ 20    In addition to CCIOA, § 7-123-104(2)(a), C.R.S. 2016, of CRNCA provides:

> (2) A nonprofit corporation's power to act may be challenged:

(a) In a proceeding against the nonprofit corporation to enjoin the act. The proceeding may be brought by a director or by a voting member or voting members in a derivative proceeding.

¶ 21    Although no Colorado case has interpreted these specific statutes, we conclude that the plain language of both statutes gives a court the authority to enjoin the violation of their provisions where a movant can show noncompliance and harm.

¶ 22    This conclusion furthers the stated purposes of the statutes to promote effective and efficient property management and is consistent with cases granting injunctive relief where the loss of a contractually negotiated right to control is at issue. *See DeJean v. Grosz*, 2015 COA 74, ¶ 13 (the right to prevent a homeowners association from engaging in contested practices during the pendency of litigation is a proper subject of an injunction); *K9Shrink, LLC v. Ridgewood Meadows Water & Homeowners Ass'n*, 278 P.3d 372, 379 (Colo. App. 2011) (injunctive relief was proper where "neighbors were irreparably harmed by plaintiffs' continuing violation of the Covenant"); *Gitlitz*, 171 P.3d at 1280 (finding that the loss of a contractually negotiated right to management and

11

control of an organization creates irreparable harm for injunctive purposes).

¶ 23    Our construction is also consistent with C.R.C.P. 65(a), which empowers courts to order injunctive relief as "a preventive and protective remedy, affording relief against *future*, rather than past, acts." *Bd. of Cty. Comm'rs v. Pfeifer*, 190 Colo. 275, 279, 546 P.2d 946, 949 (1976) (emphasis added); *see also RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (A plaintiff must show that the harm "is likely to occur before the district court rules on the merits." (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1260 (10th Cir. 2003))); *Bd. of Cty. Comm'rs v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1054 (Colo. 1992) (Injunctive relief is appropriate when "the action complained of has caused or has threatened to cause imminent injury to an interest protected by law."); *Graham v. Hoyl*, 157 Colo. 338, 341, 402 P.2d 604, 606 (1965) (The purpose of a preliminary injunction is to "prevent further harm where harm is alleged.").

¶ 24    Accordingly, we conclude that the court had the legal authority to enjoin future violations of CCIOA and CRNCA. Because Owners presented evidence at the hearing to support their

contention that the board conducted special meetings without giving the notice set forth in CCIOA and CRNCA, and because they also presented evidence that those meetings concerned amendments to the existing covenants, we remand the case for the court to make factual findings under *Rathke* to determine whether Owners are entitled to injunctive relief. The court may, in its discretion, consider additional evidence related to special board meetings that has developed since the preliminary injunction hearing.

## C.    Mootness

¶ 25    As noted, Owners initiated this litigation before the Association had submitted the Amended Declaration for a formal membership vote. However, that vote was scheduled to occur before briefing deadlines. In response to this court's order for supplemental briefing on the status of the vote, the parties filed responses. In their responses, they stated that the vote had occurred, the amendments had passed by the requisite two-thirds vote, and that amended covenants had been recorded with the Larimer County Clerk and Recorder. Thus, the Association

13

contends that all issues related to the court's refusal to enjoin a vote are moot. For the reasons stated below, we agree.

### 1. Legal Framework

¶ 26 "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not . . . to declare principles or rules of law which cannot affect the matter in issue before it." *Tippett v. Johnson*, 742 P.2d 314, 315 (Colo. 1987) (alteration in original) (quoting *Barnes v. Dist. Court*, 199 Colo. 310, 312, 607 P.2d 1008, 1009 (1980)). Thus, appellate courts ordinarily will not "render opinions on the merits of an appeal when the issues have become moot." *Johnson v. Griffin*, 240 P.3d 404, 406 (Colo. App. 2009). "An issue becomes moot when the relief granted by the court would not have a practical effect upon an existing controversy." *Trinidad Sch. Dist. No. 1 v. Lopez*, 963 P.2d 1095, 1102 (Colo. 1998).

¶ 27 The mootness doctrine, however, does not always bar judicial review of moot issues. *Id.* Two exceptions to the mootness doctrine permit courts to consider the merits of an otherwise moot matter: (1) when the matter involves an issue that is capable of repetition, yet evading review; or (2) when the matter involves a question of

great public importance or recurring constitutional violations. *People in Interest of Ofengand*, 183 P.3d 688, 691 (Colo. App. 2008); *Gresh v. Balink*, 148 P.3d 419, 422 (Colo. App. 2006).

¶ 28    Issues are capable of repetition when they could, or are likely to, reoccur in the future. *Ofengand*, 183 P.3d at 692 (issue capable of repetition because it was "likely" to reoccur); *see also Tesmer v. Colo. High Sch. Activities Ass'n*, 140 P.3d 249, 252 (Colo. App. 2006) (finding issue capable of repetition because other students "could" make similar claims in the future). Issues "evad[e] review" when the "time required to complete the legal process will necessarily render each specific challenge moot." *Rocky Mountain Ass'n of Credit Mgmt. v. Dist. Court*, 193 Colo. 344, 345-46, 565 P.2d 1345, 1346 (1977) (citation omitted).

## 2.    Analysis

¶ 29    Owners contend that the voting issue is capable of repetition yet evading review because the board can propose amendments through special meetings without notice and then submit those changes for a membership vote. The Association contends any issues related to the vote are moot because the vote has already occurred. Neither party asserts that this issue is one of great

15

importance or involves a recurring constitutional violation; thus, we do not address this exception. *State Bd. of Chiropractic Exam'rs v. Stjernholm*, 935 P.2d 959, 971 (Colo. 1997).

¶ 30 Owners sought an injunction to prevent a vote that they believed would lead to an unlawful result — a unilateral change in an easement on their property. Because a vote has occurred, the covenants now reflect the easement use changes — the underlying issue in this case. Thus, the Association's authority to change easement ownership rights by a vote is not capable of repetition in this case and can now be reviewed on the merits. While this issue may be capable of repetition in other cases and between other parties, the issue will not evade review because the "result" of the vote (here the legality of the easement use change) will be the subject of the action giving rise to the injunction request. Accordingly, we conclude that the issue is not capable of repetition but evading review.

¶ 31 A claim is moot when prospective relief is unnecessary to remedy an existing controversy or prevent its reoccurrence. Id. The vote has occurred and no uncertainty remains about whether the Association can obtain a two-thirds majority vote to change the

16

easement. Thus, we conclude that deciding whether the district court erred when it denied injunctive relief because the alleged irreparable injury was speculative "would not have a practical effect upon an existing controversy." *Trinidad,* 963 P.2d at 1102. As acknowledged by Owners, the issue of harm is now squarely before the district court for review. Accordingly, we conclude that no exception to the mootness doctrine applies concerning the membership vote, and we dismiss this portion of the appeal.

### III.     Conclusion

¶ 32     We reverse the court's finding that it lacked the authority to enjoin future violations of civil statutes, and remand the case for further factual findings. We direct the court to apply the factors set forth in *Rathke* to the evidence including, in its discretion, any additional evidence related to special board meetings that has developed since the preliminary injunction hearing, and to determine whether injunctive relief related to those meetings is warranted. We dismiss the remaining claims as moot.

JUDGE TAUBMAN and JUDGE DAILEY concur.