24CA2195 Ball v Loveland 01-08-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2195
Larimer County District Court No. 24CV30466
Honorable Laurie K. Dean, Judge

Richard Ball, resident of the City of Loveland, Dave Clark, resident of the City of Loveland, John Fogle, resident of the City of Loveland, Donald Overcash, resident of the City of Loveland, Daniel Mills, resident of the City of Loveland, Chauncey Taylor, resident of the City of Loveland, Christy Taylor, resident of the City of Loveland, and Claire Haenny, resident of the City of Loveland,

Plaintiffs-Appellants,

v.

City of Loveland,

Defendant-Appellee.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Gomez and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 8, 2026

Sinnett Law Office, LLC, Russell W. Sinnett, Loveland, Colorado, for Plaintiffs-Appellants

Nathan Dumm & Mayer PC, Nicholas C. Poppe, Denver, Colorado, for Defendant-Appellee

¶ 1 Plaintiffs, Richard Ball, Dave Clark, John Fogle, Donald Overcash, Daniel Mills, Chauncey Taylor, Christy Taylor, and Claire Haenny, appeal the district court's judgment dismissing their complaint against defendant, City of Loveland, pursuant to C.R.C.P. 12(b)(1). We affirm and remand the case for the district court to determine and award Loveland its appellate attorney fees and costs.

## I. Background

¶ 2 This case involves Loveland's plans to build a multi-use development known as Centerra South on 139 acres of land. In May 2023, the Loveland City Council passed two resolutions regarding Centerra South: (1) R-50-2023, which designated and approved a new urban renewal plan for the development; and (2) R-54-2023, the development's master financing and intergovernmental agreement (MFA). On November 7, 2023, Loveland held a citywide election where the voters approved ballot question 301, which amended the Loveland city charter to require that any change or modification to an urban renewal plan must be subsequently ratified by a vote of Loveland's eligible electors before taking effect. Ballot question 301 is now codified as section 15-9 of

the Loveland City Charter and became effective immediately upon passage.

¶ 3　　On November 21, 2023, the Loveland City Council voted to repeal R-50-2023 and R-54-2023. Five days later, the Centerra South developer sued Loveland in Larimer County District Court, Case No. 23CV30956, asserting claims for "breach of contract, unlawful termination of the [u]rban [r]enewal [p]lan and MFA, unlawful procedure by the Council, relief under the [c]harter provisions, declaratory judgment, and violation of the contract clauses contained in the United States and Colorado Constitutions." Then in February 2024, after the developer tendered a settlement offer to Loveland in that case, the City Council approved a motion to rescind the November 21, 2023, motions that repealed R-50-2023 and R-54-2023, thereby reinstating the two Centerra South resolutions that had been adopted in May 2023.

¶ 4    In June 2024, plaintiffs filed their complaint against Loveland in Larimer County District Court.[1]  Plaintiffs are all eligible electors of Loveland.  In their complaint, plaintiffs asserted three claims for relief.  First, they sought a declaratory judgment against Loveland that the "relevant actions or inactions by the Council on November 21, 2023, as they pertain to the rescission of the [r]esolutions involving Centerra South must be declared invalid, void, and of no effect because those actions directly violated the [c]harter, and other applicable laws or procedures of the Council itself."  They also sought an injunction against the City Council from taking any further action on the two resolutions.

¶ 5    Second, plaintiffs alleged that the City Council's repeal of R-50-2023 and R-54-2023 on November 21, 2023, violated plaintiffs' due process rights under the United States and Colorado Constitutions because, among other reasons, they were adopted without a vote of the electorate, as required by then-recently

_____

[1] Plaintiffs initially filed their complaint in Loveland Municipal Court.  That court then assigned the case to Greeley Municipal Court under an Intergovernmental Agreement for Judicial Administrative Services.  The Greeley court then found that it didn't have jurisdiction and dismissed the case.  Plaintiffs ultimately refiled their complaint in Larimer County District Court.

approved ballot question 301, now codified as section 15-9 of the Loveland City Charter. For this claim, plaintiffs sought a judgment declaring the City Council's actions "to be null, void, and of no effect" because they had violated plaintiffs' due process rights as eligible electors of Loveland.

¶ 6    Third, plaintiffs alleged that the City Council's repeal of R-50-2023 and R-54-2023 on November 21, 2023, constituted a breach of its fiduciary duty under section 24-18-103, C.R.S. 2025. For this claim, plaintiffs sought a judgment declaring the City Council's repeal of the two resolutions "to be null, void, and of no effect" because the City Council members had violated their fiduciary duties by repealing the resolutions without a vote of the eligible electors of Loveland.

¶ 7    Plaintiffs also sought remedies available under section 3-3 of the Loveland City Charter, which provides that no person who "has been convicted of . . . a willful violation" of the City Charter "shall be nominated or elected as [m]ayor or [c]ouncil member," City of Loveland Charter § 3-3(c), and a declaratory judgment that the "Mayor and each Council member shall continue to meet the

4

requirements of this section throughout the term of office." *Id.* § 3-3(f).

¶ 8    In July 2024, Loveland filed a motion to dismiss plaintiffs' complaint under C.R.C.P. 12(b)(1). In it, Loveland argued that plaintiffs lacked standing to bring their complaint and, even if plaintiffs had standing, their claims were moot because in February 2024, the City Council rescinded the November 21, 2023, motions that repealed the Centerra South resolutions. In other words, plaintiffs received all the relief they were seeking in their complaint when the City Council adopted the recission measures in February 2024.

¶ 9    Plaintiffs responded that their claims weren't moot because the settlement agreement in the developer's case, pursuant to which the City Council agreed to rescind the November 21, 2023, motions, wasn't yet completed and the agreement did nothing to restore plaintiffs' right to vote.

¶ 10    The district court granted Loveland's motion to dismiss in a written order and dismissed the case with prejudice. Regarding standing, the district court found that plaintiffs had established standing for their first claim. The district court then found that

plaintiffs had standing for only part of their second claim and didn't have standing for their third claim. Plaintiffs don't appeal the district court's standing determinations. Regarding mootness, the district court found that all the claims that plaintiffs had standing to assert were moot because "the relief sought in this complaint ha[d] already been achieved: the November 21, 2023 rescissions have been, in effect, voided by subsequent City Council action."

## II.    Analysis

¶ 11    On appeal, plaintiffs contend that the district court erred in dismissing their complaint based on mootness. Specifically, plaintiffs argue that (1) the district court erred in determining that the case was moot; and (2) even if the case was mooted by the events of February 2024, the district court erred by failing to consider and apply two exceptions to mootness and permit the case to proceed. We aren't persuaded by either contention.

### A.    Standard of Review and Legal Principles

¶ 12    We review de novo the legal question of whether a case is moot. *Colo. Mining Ass'n v. Urbina*, 2013 COA 155, ¶ 23. "Mootness is a jurisdictional prerequisite that can be addressed at any stage during the proceedings." *Diehl v. Weiser*, 2019 CO 70,

6

¶ 9. "A case is moot when the relief sought, if granted, would have no practical legal effect on an existing controversy." *People in Interest of L.O.L.*, 197 P.3d 291, 293 (Colo. App. 2008). "Courts must confine their exercise of jurisdiction to cases that present a live case or controversy." *Davidson v. Comm. for Gail Schoettler, Inc.*, 24 P.3d 621, 623 (Colo. 2001). In sum, if a case is moot, a court will ordinarily refrain from addressing it. *Trinidad Sch. Dist. No. 1 v. Lopez*, 963 P.2d 1095, 1102 (Colo. 1998).

### B. Mootness

¶ 13 We begin by addressing plaintiffs' contention that their claims aren't moot.[2] We conclude that they are.

¶ 14 As discussed above, plaintiffs assert in their complaint that the Loveland Mayor and City Council members used an "improper procedure" to repeal R-50-2023 and R-54-2023 and therefore

---

[2] As noted above, the district court dismissed part of plaintiffs' second claim and their entire third claim on the basis that they lacked standing. In their opening brief, plaintiffs seem to baldly contend that they have standing to assert all of their claims. But they don't develop any argument challenging the district court's standing determination. Accordingly, we don't address their undeveloped standing argument. *See, e.g., People v. Cuellar*, 2023 COA 20, ¶ 44 (declining to address on appeal an undeveloped argument).

deprived the eligible electors of Loveland of their right to vote.[3]

Notwithstanding that the allegedly improper repeal has itself been rescinded, plaintiffs argue that the case isn't moot because their injury — namely, that they were denied their right to vote — wasn't cured by the February 2024 rescission of the City Council's actions taken on November 21, 2023.  They further argue that the district court incorrectly determined that the settlement pursuant to which the repeal of the resolutions was rescinded returned plaintiffs to the "status quo."  Finally, plaintiffs assert that in addition to the nullification of the rescissions, they sought "a declaration that the November 21 [repeal] was willful and unlawful" and that such a declaration would "carr[y] significant legal weight" because the City Council's November 21, 2023, actions deprived the eligible electors of Loveland of their right to vote.

---

[3] Specifically, plaintiffs assert that no "notice regarding a public hearing on [the November 21, 2023] motions was published in a newspaper."  They also assert that the mayor limited debate on the motions to only ten minutes and used the majority of that time to speak in support of them.  They conclude by alleging that the mayor overruled other City Council members' objections that the procedure was improper.

¶ 15    Essentially, Plaintiffs argue that their complaint isn't moot because they are seeking (and are entitled to) a declaration that what the City Council did on November 21, 2023, was wrong. The remedy they sought in their complaint, however, is a declaration that the City Council's actions on November 21, 2023, as they pertain to the rescission of the Centerra South resolutions, are "invalid, void, and of no effect because those actions violated the charter."[4] And because the Centerra South resolutions are now reinstated, and the repeal was rescinded, the declaration that plaintiffs seek would have "no practical legal effect upon the existing controversy." *Van Schaack Holdings, Ltd. v. Fulenwider*, 798 P.2d 424, 426 (Colo. 1990); *see Stor-N-Lock Partners #15, LLC v. City of Thornton*, 2018 COA 65, ¶ 39 (explaining that when evaluating whether a case is moot, "we ask whether obtaining the relief would matter"; "[i]f not, the case is moot").

¶ 16    Put succinctly, a request for a judicial determination that what the City Council did was unlawful doesn't save plaintiffs' complaint from the clutches of mootness. In *San Juan Hut Systems, Inc. v.*

---

[4] In their complaint, plaintiffs expressly disclaim that they are seeking monetary damages as part of their suit.

9

*Board of County Commissioners*, 2023 COA 10, ¶ 32, the plaintiff sought "a declaratory judgment that the [c]ounty had exceeded its statutory authority" when the county closed a road and adopted a winter maintenance agreement (WMA) for landowners along that road. The plaintiff also sought "an injunction to prevent any actions taken in excess of that authority." *Id.* After the appeal was filed, the General Assembly amended a statute to authorize the county to close roads. *Id.* at ¶ 22. A division of this court held that because the amended statute now grants the county the statutory authority to enter these WMAs, "an appellate decision in [the plaintiff's] favor regarding the previous statute would have no practical effect on the controversy as it exists now." *Id.* at ¶ 32. The same is true here. A declaration that what the City Council did on November 21, 2023, was unlawful would have no practical effect on the controversy, given that what it did on November 21, 2023, has been undone. *Cf. Castillo v. STEM Sch. Highlands Ranch*, 2025 COA 88, ¶¶ 12, 62 (concluding that the district court didn't err in dismissing the plaintiffs' claims as moot when the parties conducted robust discovery and the defendant agreed to pay the

10

plaintiff the maximum amount of monetary damages under the applicable statute, even though the defendant didn't admit liability).

¶ 17    Plaintiffs also argue that the City Council's actions deprived them and other eligible electors of Loveland of their right to vote and because this right hasn't been restored, the case isn't moot. But because the resolutions were reinstated, there is nothing for the eligible electors of Loveland to vote on.  Indeed, the remedy plaintiffs sought belies that a vote was the gravamen of their complaint.  They didn't seek a vote.  Instead, they sought a nullification of the City Council's actions — which is exactly what

was achieved in February 2024, rendering their claims moot. The eligible electors of Loveland have been returned to the status quo.[5]

¶ 18    Finally, it appears that plaintiffs assert that their claims aren't moot because of the voluntary cessation doctrine. *See Portley-El v. Colo. Dep't of Corr.*, 2022 COA 86, ¶ 19 (explaining the policy behind the voluntary cessation doctrine — "if a defendant's voluntary cessation of a challenged practice could deprive a court of its power to determine the legality of the practice, then in each case, the defendant would be 'free to return to [its] old ways'" (quoting

---

[5] In their complaint, plaintiffs also seem to request a remedy under section 3-3(c) of the Loveland City Charter, which provides that "[n]o person who has been convicted of . . . a willful violation of this [c]harter[] shall be nominated or elected as [m]ayor or [c]ouncil member." Plaintiffs' counsel also mentioned this potential relief at oral argument. In their opening brief on appeal, however, plaintiffs didn't invoke this requested relief as providing a basis for saving their case from being rendered moot. Given the language of the provision — that a "conviction" is required — and that only the city (and none of the individual council members or the mayor) are parties to this case, it's understandable that they didn't advance any such argument in their opening brief. In any event, because plaintiffs don't develop such an argument in their opening brief, we don't address it any further. *See, e.g., Cuellar*, ¶ 44; *cf. People v. Owens*, 2024 CO 10, ¶ 90 ("[I]t is well-settled that an appellate court will not consider arguments raised for the first time in a reply brief . . . ."); *Campaign Integrity Watchdog LLC v. Griswold*, 2025 COA 18, ¶ 58 (declining to address arguments raised for the first time during oral argument).

12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000))).  But this assertion isn't developed on appeal. Indeed, it only spans a single cursory sentence in plaintiffs' opening brief.[6]  We may decline to address it on this basis alone.  *See People v. Cuellar*, 2023 COA 20, ¶ 44 (we don't address undeveloped arguments).  Even so, in looking at the merits of the voluntary cessation doctrine, we don't see how it applies to the facts of this case.

---

[6] The only case that plaintiffs cite in support of their voluntary cessation argument in their opening brief is *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288-89 (2000).  In the explanatory parenthetical accompanying their citation, plaintiffs claim that the case stands for the proposition that "a case is not moot when the city repealed an unlawful ordinance during litigation; the city remained 'free to reenact' the offending ordinance after dismissal, so the dispute was alive."  But *City of Erie* doesn't stand for that proposition.  In *City of Erie*, the city had enacted an ordinance banning public nudity, and Pap's, "a nude dancing establishment," filed suit to enjoin enforcement of the ordinance and have it declared unconstitutional.  *Id.* at 282-83.  Ultimately, the Pennsylvania Supreme Court struck down the ordinance.  *Id.* at 283.  After the United States Supreme Court granted certiorari, Pap's ceased operations.  *Id.* at 287.  It was based on this cessation of operations that Pap's — not the city — sought to have the case dismissed as moot.  *Id.*  In addressing mootness, the Court determined that the case wasn't rendered moot by Pap's ceasing operations.  *Id.* at 287-89.  Thus, contrary to plaintiffs' characterization of the case, the city never repealed the ordinance, and the Court's mootness analysis had nothing to do with voluntary action on the city's part.  *Id.*

¶ 19 The City Council's rescission of the November 21, 2023, motions doesn't have the markers of voluntary cessation for three reasons. First, Loveland has "actually changed or rescinded the challenged policy" rather than merely stopped enforcing it. *See Portley-El*, ¶ 23. Second, the motions have been fully rescinded such that there is no discretionary enforcement. *See id.* Third, and perhaps most importantly, Loveland contends, and plaintiffs don't contest, that Loveland's cessation was part of a settlement agreement. In other words, Loveland has "formally agreed" to rescind the November 21, 2023, motions, and it will presumably face adverse consequences in the form of a breach of contract claim if it attempts to again repeal the resolutions. *Id.* at ¶ 32. For all these reasons, we reject plaintiffs' voluntary cessation contention.

¶ 20 Accordingly, we agree with the district court's determination that the case is moot.[7]

---

[7] Plaintiffs also argue that the district court erred "when it applied facts from a separate and distinct legal dispute to render" their claims moot. But they don't explain why the court erred in this way or cite any support for this contention. So we decline to address this undeveloped argument further. *See Cuellar*, ¶ 44.

## C.    Mootness Exceptions

¶ 21    Next we address plaintiffs' contention that two exceptions to the mootness doctrine should be applied to their complaint and save it from dismissal. Those two exceptions are "(1) when the matter involves an issue that is capable of repetition, yet evading review; or (2) when the matter involves a question of great public importance or recurring constitutional violations." *Anderson v. Applewood Water Ass'n*, 2016 COA 162, ¶ 27. Plaintiffs argue on appeal that both of these mootness exceptions apply to this case and that the district court erred by failing to address them. Loveland responds that this argument is unpreserved because plaintiffs had the opportunity to, but didn't, raise either exception to the district court. We agree that plaintiffs had the opportunity to raise these exceptions before the district court but didn't do so. Nevertheless, because, for the reasons discussed below, we conclude that the exceptions don't apply to this case, we need not — and, therefore, don't — decide whether plaintiffs' failure to preserve this argument before the district court waives it on appeal. *See In re Marriage of Mack*, 2022 CO 17, ¶ 12.

¶ 22    First, plaintiffs argue that their case isn't moot because it's capable of repetition yet evades review: "[T]he Loveland City Council will almost always act more quickly that [sic] a case being litigated in district court" and "the conditions that gave rise to this dispute can easily happen again." But plaintiffs don't further explain these conclusory assertions. Nor are we persuaded that either is correct. Indeed, the history of this dispute demonstrates otherwise, as the case initiated against the city by the Centerra South developer spanned several months before terminating in a binding settlement, and the binding settlement itself undermines the contention that the dispute will arise again. In sum, plaintiffs haven't shown that (1) their case is likely to recur in the future or that (2) "the time required to complete the legal process will necessarily render each specific challenge moot." *Anderson*, ¶ 28 (quoting *Rocky Mountain Ass'n of Credit Mgmt. v. Dist. Ct.*, 565 P.2d 1345, 1346 (Colo. 1977)).

¶ 23    Second, plaintiffs argue that their case involves a matter of great public importance — namely, "[t]he electorate's right to vote on significant public projects, the enforcement of the City's [c]harter, and the integrity of Council actions." They assert that the "public interest in having this controversy decided is substantial"

16

because it "would provide much-needed clarity on the requirements of Loveland's Charter and the rights of citizens if the City Council violates the law, particularly willfully." But plaintiffs don't assert in their complaint that the City Charter is vague and needs clarification. Indeed, the city's capitulation in rescinding the November 2023 repeal indicates a clear understanding of what is required by section 15-9 of the Loveland City Charter. Thus, although the right of the electorate to vote writ large is certainly an issue of great public concern, the discreet issue here — whether section 15-9 of the Loveland City Charter required a vote of the public before the measures adopted in November 2023 were enacted — isn't particularly weighty or in need of judicial clarification. *Cf. Humphrey v. Sw. Dev. Co.*, 734 P.2d 637, 640 (Colo. 1987) ("The jurisdictional dispute before us is significant for future water court proceedings . . . and is of public importance statewide."); *People in Interest of C.G.*, 2015 COA 106, ¶ 44 (concluding that "the issue of what efforts due diligence requires before a parent may be served by publication under" a statute "affects parental rights of constitutional magnitude" and thus falls under this exception); *Combs v. Nowak*, 43 P.3d 743, 744 (Colo.

App. 2002) ("[D]elaying . . . review would cause uncertainty regarding the composition of the city government. Thus, we conclude that the matter . . . involves a question of great public importance to the citizens of Central City."). Therefore, we conclude that this case doesn't present an issue of great public importance such that the case should proceed notwithstanding having been rendered moot.

¶ 24 Accordingly, we reject plaintiffs' argument that either of the two mootness exceptions apply to their case and conclude that the district court didn't err in not addressing them in its order dismissing the case.

### D. Appellate Attorney Fees and Costs

¶ 25 Loveland requests its reasonable attorney fees and costs for the defense of this appeal. It argues that because the district court awarded attorney fees to Loveland pursuant to section 13-17-201, C.R.S. 2025, it's entitled to recover reasonable attorney fees and costs for successfully defending the appeal. We agree. The district court awarded Loveland its reasonable attorney fees and costs under section 13-17-201, which provides that an award of attorney fees is mandatory when a district court dismisses a tort action

18

under C.R.C.P. 12(b).[8]  In turn, "[a] party who successfully defends a dismissal order is entitled to recover reasonable attorney fees incurred on appeal."  *Kreft v. Adolph Coors Co.*, 170 P.3d 854, 859 (Colo. App. 2007).  We therefore remand to the district court to determine the amount of reasonable attorney fees and costs Loveland incurred in this appeal.  *Id.*; C.A.R. 39.1.

¶ 26     Finally, in responding to Loveland's request for fees, plaintiffs assert that the district court's order awarding attorney fees and costs was in error because their claims weren't groundless, frivolous, or vexatious.  We reject this contention for two reasons.  First, the district court's attorney fees order isn't the subject of this appeal, so we don't have jurisdiction to review the merits of the attorney fees order the district court entered against plaintiffs.  *See, e.g.*, *Woodall v. Godfrey*, 2024 COA 42, ¶ 51 n.8 (holding that failure to separately appeal the award of attorney fees deprives this court of jurisdiction to consider the issue (first citing *Kennedy v.*

_____

[8] In its order granting Loveland's motion for attorney fees, the district court found that plaintiffs' declaratory judgment claim was nontort, and their due process and statutory breach of fiduciary duty claims were tort.  Therefore, it found that the "essence of the action is tortious in nature" and section 13-17-201, C.R.S. 2025, applied.

*Gillam Dev. Corp.*, 80 P.3d 927, 929 (Colo. App. 2003); and then citing *Dawes Agency, Inc. v. Am. Prop. Mortg., Inc.*, 804 P.2d 255, 257 (Colo. App. 1990))). Second, plaintiffs' focus on the lack of groundlessness, frivolity, or vexatiousness of their claims misses the mark, as fees weren't awarded on that basis, but instead because the court dismissed a complaint sounding in tort pursuant to C.R.C.P. 12(b). *Compare* § 13-17-201(1) (mandating an award of attorney fees in tort actions when the case is dismissed pursuant to C.R.C.P. 12(b) prior to trial), *with* § 13-17-102(2), C.R.S. 2025 (mandating an award of fees where a party brings or defends a civil action that "lacked substantial justification").

## III.   Disposition

¶ 27     The judgment is affirmed, and the case is remanded for the district court to determine and award Loveland its reasonable appellate attorney fees and costs.

JUDGE GOMEZ and JUDGE SULLIVAN concur.

20